| | |
|---|---|
| Dennis F. Dunne, Esq.     (admitted *pro hac vice*) | Tyler P. Brown, Esq.      (VSB No. 28072) |
| Andrew M. Leblanc, Esq. (admitted *pro hac vice*) | Justin F. Paget, Esq.      (VSB No. 77949) |
| Michael W. Price, Esq.     (admitted *pro hac vice*) | Jennifer E. Wuebker, Esq. (VSB No. 91184) |
| Lauren C. Doyle, Esq.     (admitted *pro hac vice*) | **HUNTON ANDREWS KURTH LLP** |
| **MILBANK LLP** | Riverfront Plaza, East Tower |
| 55 Hudson Yards | 951 East Byrd Street |
| New York, New York 10001 | Richmond, Virginia 23219 |
| Telephone:     (212) 530-5000 | Telephone:     (804) 788-8200 |
| Facsimile:     (212) 530-5219 | Facsimile:     (804) 788-8218 |

Thomas R. Kreller, Esq.   (admitted *pro hac vice*)
**MILBANK LLP**
2029 Century Park East
33rd Floor
Los Angeles, California 90067
Telephone:     (424) 386-4000
Facsimile:     (213) 629-5063

*Proposed Co-Counsel for Debtors and Debtors in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GUITAR CENTER, INC. *et al.*,[1] | ) | Case No. 20-34656 (KRH) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## NOTICE OF FILING OF PROPOSED ORDER CONFIRMING THE
## AMENDED JOINT PRE-PACKAGED CHAPTER 11 PLAN OF REORGANIZATION

**PLEASE TAKE NOTICE** that on December 17, 2020, the above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby submit the proposed *Findings of Fact, Conclusions of Law, and Order: (I) Approving, on a Final Basis, Adequacy of the Disclosure Statement; (II) Confirming the Amended Joint Pre-Packaged Chapter 11 Plan; and (III) Granting Related Relief* (as may be amended, modified, or supplemented, the "Proposed Confirmation Order"), which is attached hereto as **Exhibit A**.

---

[1]   The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Guitar Center Holdings, Inc. (3262); Guitar Center, Inc. (0862); Guitar Center Stores, Inc. (4340); GTRC Services, Inc. (9503); GC Business Solutions, Inc. (3928); Guitar Center Gift Card Company, LLC (3370); Music & Arts Instructor Services, LLC (7811); and AVDG, LLC (4440).  The Debtors' service address is 5795 Lindero Canyon Rd., Westlake Village, CA 91362.

**PLEASE TAKE FURTHER NOTICE THAT** the Debtors intend to present a form of order substantially similar to the Proposed Confirmation Order at the hearing scheduled to begin on **December 17, 2020 at 9:00 a.m. (prevailing Eastern Time)** before the Bankruptcy Court.

**PLEASE TAKE FURTHER NOTICE** the Debtors reserve the right to amend, modify or otherwise supplement the Proposed Confirmation Order in all respects.

[*Remainder of page intentionally left blank*]

Dated:  December 16, 2020
Richmond, Virginia

/s/ Jennifer E. Wuebker

Tyler P. Brown, Esq.          (VSB No. 28072)
Justin F. Paget, Esq.          (VSB No. 77949)
Jennifer E. Wuebker, Esq. (VSB No. 91184)
**HUNTON ANDREWS KURTH LLP**
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone:    (804) 788-8200
Facsimile:     (804) 788-8218
Email:          tpbrown@huntonak.com
                    jpaget@huntonak.com
                    jwuebker@huntonak.com

-and-

Dennis F. Dunne, Esq.     (admitted *pro hac vice*)
Andrew M. Leblanc, Esq. (admitted *pro hac vice*)
Michael W. Price, Esq.     (admitted *pro hac vice*)
Lauren C. Doyle, Esq.      (admitted *pro hac vice*)
**MILBANK LLP**
55 Hudson Yards
New York, New York 10001
Telephone:    (212) 530-5000
Facsimile:     (212) 530-5219
 Email:          ddunne@milbank.com
                    aleblanc@milbank.com
                    mprice@milbank.com
                    ldoyle@milbank.com

Thomas R. Kreller, Esq. (admitted *pro hac vice*)
**MILBANK LLP**
2029 Century Park East
33rd Floor
Los Angeles, California 90067
Telephone:    (424) 386-4000
Facsimile:     (213) 629-5063
Email:          tkreller@milbank.com

*Proposed Co-Counsel for Debtors and Debtors in Possession*

**<u>EXHIBIT A</u>**

Dennis F. Dunne, Esq.    (admitted *pro hac vice*)
Andrew M. Leblanc, Esq. (admitted *pro hac vice*)
Michael W. Price, Esq.    (admitted *pro hac vice*)
Lauren C. Doyle, Esq.    (admitted *pro hac vice*)
**MILBANK LLP**
55 Hudson Yards
New York, New York 10001
Telephone:    (212) 530-5000
Facsimile:    (212) 530-5219

Thomas R. Kreller, Esq.    (admitted *pro hac vice*)
**MILBANK LLP**
2029 Century Park East
33rd Floor
Los Angeles, California 90067
Telephone:    (424) 386-4000
Facsimile:    (213) 629-5063

Tyler P. Brown, Esq.    (VSB No. 28072)
Justin F. Paget, Esq.    (VSB No. 77949)
Jennifer E. Wuebker, Esq. (VSB No. 91184)
**HUNTON ANDREWS KURTH LLP**
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone:    (804) 788-8200
Facsimile:    (804) 788-8218

*Proposed Co-Counsel for Debtors and Debtors in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| GUITAR CENTER, INC. *et al.*,[1] | ) | Case No. 20-34656 (KRH) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER: (I) APPROVING, ON A FINAL BASIS, ADEQUACY OF THE DISCLOSURE STATEMENT; (II) CONFIRMING THE AMENDED JOINT PRE-PACKAGED CHAPTER 11 PLAN; AND (III) GRANTING RELATED RELIEF

WHEREAS, the above-captioned debtors and debtors in possession (collectively, the

"Debtors") having, among other things:

1.    commenced, on November 20, 2020, a prepetition solicitation (the "Solicitation")
of votes on the *Joint Pre-Packaged Chapter 11 Plan of Reorganization of Guitar
Center, Inc. et al.* [Docket No. 16] (the "Original Plan" and, as amended by the

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:
Guitar Center Holdings, Inc. (3262); Guitar Center, Inc. (0862); Guitar Center Stores, Inc. (4340); GTRC
Services, Inc. (9503); GC Business Solutions, Inc. (3928); Guitar Center Gift Card Company, LLC (3370); Music
& Arts Instructor Services, LLC (7811); and AVDG, LLC (4440).  The Debtors' service address is 5795 Lindero
Canyon Rd., Westlake Village, CA 91362.

*Amended Joint Pre-Packaged Chapter 11 Plan of Reorganization of Guitar Center, Inc. et. al.* [Docket No. 282], (the "Amended Plan") and, as the same may be further amended, modified and supplemented from time to time, the "Plan")[2] by causing the transmittal, through their solicitation and balloting agent, Prime Clerk LLC ("Prime Clerk"), to the holders of Claims entitled to vote on the Plan of, among other things:  (i) the Plan, (ii) the *Disclosure Statement for Joint Pre-Packaged Chapter 11 Plan of Reorganization of Guitar Center, Inc. et. al.* [Docket No. 15] (the "Disclosure Statement"), (iii) the Ballots and Master Ballots to vote on the Plan, and (iv) in the case of Class 4 (Secured Notes Claims), the Cash-Out Election Notice (collectively, the "Solicitation Materials");[3]

2.      commenced, on November 21, 2020, these cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code in this Court;

3.      obtained, on November 23, 2020, the *Order: (I) Scheduling a Combined Hearing to Approve the Disclosure Statement and Confirm the Plan; (II) Establishing Objection Deadlines; (III) Approving the Form and Manner of Combined Notice; (IV) Approving Solicitation Procedures and Ballots; (V) Approving Procedures for Assumption and Rejection of Executory Contracts and Unexpired Leases; (VI) Granting Certain Extensions; and (VII) Granting Related Relief* [Docket No. 82] (the "Scheduling Order"), which, among other things: (i) approved the prepetition solicitation and voting procedures, including the Confirmation Schedule (as defined therein); (ii) conditionally approved the Disclosure Statement and its use in the Solicitation; and (iii) scheduled a Combined Hearing on December 17, 2020 at 9:00 a.m. (prevailing Eastern Time) to consider the final approval of the Disclosure Statement and the confirmation of the Plan (the "Combined Hearing");

4.      served, through Prime Clerk, on November 24 and 25, 2020, on all known holders of Claims and Interests, the U.S. Trustee and certain other parties in interest, the *Notice of: (I) Commencement of Chapter 11 Bankruptcy Cases; (II) Hearing on the Approval of Disclosure Statement, Confirmation of the Pre-Packaged Plan and Related Matters; and (III) Certain Objection Deadlines* [Docket No. 84];[4]

5.      caused, on November 27, 2020, the notice of the Combined Hearing to be published in the *New York Times* (national edition);[5]

6.      (A) filed, on December 3, 2020:  (i) the *Notice of Assumption of Certain Executory Contracts and Unexpired Leases in Connection with Confirmation of the Debtors'*

---

[2]  Capitalized terms used but not otherwise defined in this Order shall have the meanings ascribed to them in the Plan.

[3]  *See Affidavit of Service of Solicitation Materials* [Docket No. 127] (the "Solicitation Affidavit") and the *Affidavit of Service* [Docket No. 119] (the "Cash-Out Notice Affidavit").

[4]  *See Affidavit of Service* [Docket No. 143] (the "Combined Notice Affidavit").

[5]  *See Affidavit of Publication* [Docket No. 138] (the "Publication Affidavit").

*Joint Pre-Packaged Chapter 11 Plan of Reorganization* [Docket No. 157] listing the Executory Contracts and Unexpired Leases to be assumed by the Debtors pursuant to the Plan (as supplemented by the *Supplemental Notice* at Docket No. 185, and as it may be further amended, supplemented, or modified from time to time, the "Schedule of Assumed Contracts"); and (ii) the *Notice of Rejection of Certain Executory Contracts and Unexpired Leases in Connection with Confirmation of the Debtors' Joint Pre-Packaged Chapter 11 Plan of Reorganization* [Docket No. 158] listing the Executory Contracts and Unexpired Leases to be rejected by the Debtors pursuant to the Plan (as modified by Exhibit G to the Plan Supplement and as it may be further amended, supplemented, or modified from time to time, the "Schedule of Rejected Contracts"); and (B) served, on December 3 and 8, 2020, as applicable, notices thereof on each counterparty to Executory Contracts and Unexpired Leases, as applicable;[6]

7.    obtained, on December 4, 2020, the *Order: (A) Authorizing the Debtors to (I) Assume and Perform under the Fee Letter with UBS Securities LLC, (II) Pay Fees and Expenses in connection therewith, (III) Form the Notes Entities and have them Perform under the Documents Related to the Exit Notes and the Related Escrow, and (IV) Fund Certain Amounts into the Escrow Account; and (B) Granting Related Relief* [Docket No. 175] (the "Escrow Order").

8.    filed and served, on December 7, 2020, December 10, 2020, [and December [16], 2020], notices of the filing of the Plan Supplement [Docket Nos. 183, 227, and [●]];[7]

9.    filed, on December 15, 2020, the *Amended Declaration of Craig E. Johnson of Prime Clerk LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Joint Pre-Packaged Chapter 11 Plan of Reorganization of Guitar Center, Inc. et al.* [Docket No. 272] (the "Voting Declaration");

10.   filed, on December 14, 2020:

      a.    the *Debtors' Memorandum of Law in Support of an Order: (I) Approving, on a Final Basis, Adequacy of the Disclosure Statement; (II) Confirming the Joint Pre-Packaged Plan of Reorganization; and (III) Granting Related Relief* [Docket No. 253] (the "Confirmation Brief");

---

[6]    *See Affidavit of Service* [Docket Nos. 194 and [●]] (collectively, the "Executory Contracts Notice Affidavit").

[7]    *See Affidavit of Service* [Docket Nos. 252 and [●]] (collectively, the "Plan Supplement Affidavit" and, together with the Solicitation Affidavit, the Cash-Out Notice Affidavit, the Combined Notice Affidavit, the Publication Affidavit, the Executory Contracts Notice Affidavit, and the various other affidavits and declarations of service relating to the matters set forth in this preamble, the "Affidavits").

b.       the *Declaration of Tim Martin in Support of Confirmation of the Joint Pre-Packaged Plan of Reorganization of Guitar Center, Inc. et al.* [Docket No. [254]] (the "<u>Confirmation Declaration</u>");

c.       the *Declaration of Eric Winthrop in Support of Confirmation of the Joint Pre-Packaged Plan of Reorganization of Guitar Center, Inc. et al.* (the "<u>Winthrop Declaration</u>"); and

d.       the *Declaration of Rob Shapiro in Support of Confirmation of the Joint Pre-Packaged Plan of Reorganization of Guitar Center, Inc. et al.* (the "<u>Shapiro Declaration</u>"); and

11.     filed and served, on December [16], 2020, the Amended Plan;

12.     filed, on December 16, 2020, a reply to the objections to confirmation of the Plan [Docket No. 281] (the "<u>Confirmation Reply</u>");

WHEREAS, the Court having, among other things:

1.     held, on December [17], 2020 at 9:00 a.m. (prevailing Eastern Time), the Combined Hearing;

2.     heard the statements, arguments, and any objections made at the Combined Hearing;

3.     reviewed the Disclosure Statement, the Plan, the Ballots, the Plan Supplement, the Confirmation Brief, the Confirmation Declaration, the Confirmation Reply, the Affidavits, and the Voting Declaration;

4.     taken judicial notice of all the papers and pleadings filed, all orders entered and all evidence proffered or adduced and all arguments made at the hearings held before the Court during the pendency of these cases;

WHEREAS, any objections to the adequacy of the Disclosure Statement, the confirmation of the Plan, and the assumption or rejection of the Executory Contracts and Unexpired Leases have been settled, withdrawn, resolved, or overruled and denied on the merits by this Court;

NOW, THEREFORE, based on the foregoing; and after due deliberation thereon and sufficient cause appearing therefor, this Court hereby makes and issues the following findings of fact, conclusions of law, and order:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS HEREBY FOUND AND DETERMINED THAT:

A.      <u>Findings of Fact and Conclusions of Law</u>.  The findings and conclusions set forth in this Order and on the record of the Combined Hearing constitute this Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Bankruptcy Rules 7052 and 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, or vice versa, they are adopted as such.

B.      <u>Jurisdiction, Venue, Core Proceeding</u>.  This Court has jurisdiction over these cases and over the subject matters of this Order pursuant to 28 U.S.C. § 1334 and the *Standing Order of Reference from the United States District Court for the Eastern District of Virginia*, dated August 15, 1984.  Approval of the Disclosure Statement and confirmation of the Plan are core proceedings pursuant to 28 U.S.C. § 157(b), and this Court has jurisdiction to enter a final order with respect thereto.  The Debtors consent to the entry of a final order by the Court to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The Debtors are eligible debtors under section 109 of the Bankruptcy Code.  The Debtors were and are proper plan proponents under section 1121(a) of the Bankruptcy Code.

C.      <u>Burden of Proof</u>.  Based on the record of these cases, each of the Debtors has met the burden of proving each element of sections 1125 and 1129 of the Bankruptcy Code by a preponderance of the evidence.  The requirements for confirmation set forth in sections 1129(a)

and (b) of the Bankruptcy Code, which include by reference sections 1122(a) and 1123(a)(1) of the Bankruptcy Code, have been satisfied.

D.    <u>Adequacy of Disclosure Statement</u>. The Disclosure Statement: (i) contains sufficient information of a kind necessary to satisfy the disclosure requirements of applicable nonbankruptcy laws, rules, and regulations, including the Securities Act; and (ii) contains "adequate information," as such term is defined in section 1125(a)(1) and used in section 1126(b)(2) of the Bankruptcy Code, with respect to the Debtors, the Plan, and the transactions contemplated therein. The Filing of the Disclosure Statement satisfied Bankruptcy Rule 3016(b).

E.    <u>Solicitation</u>. As described in and evidenced by the Solicitation Affidavit, the Solicitation and the transmittal and service of the Solicitation Materials were: (i) timely, adequate, appropriate, and sufficient under the circumstances; and (ii) in compliance with sections 1125(g) and 1126(b) of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, the applicable Local Bankruptcy Rules, the Scheduling Order and all applicable nonbankruptcy rules, laws, and regulations applicable to the Solicitation, including the registration requirements under the Securities Act. The Solicitation Materials, including the Ballots and the Cash-Out Election Notice, adequately informed: (a) the holders of Claims entitled to vote on the Plan of the procedures and deadline for completing and submitting the Ballots and Master Ballots; and (b) the holders of the Secured Notes Claims of, and the procedures and the deadline for making, the election to receive Cash in lieu of all or a portion of the New Preferred Equity in accordance with Article IV.D.4 of the Plan. No further notice is required. The period for voting on the Plan and for making the foregoing cash election, in each case, provided a reasonable and sufficient period of time for such holders to make an informed decision.

F.      <u>Tabulation</u>.  As described in and evidenced by the Voting Declaration, (i) the holders of Claims in Class 4 (Secured Notes Claims) and Class 6 (Unsecured Notes Claims) are Impaired under the Plan and have voted to accept the Plan in the numbers and amounts required by section 1126 of the Bankruptcy Code, and (ii) no Class that was entitled to vote on the Plan voted to reject the Plan.  All procedures used to tabulate the votes on the Plan were in good faith, fair, reasonable, and conducted in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Disclosure Statement, the Scheduling Order, and all other applicable nonbankruptcy laws, rules, and regulations.

G.      <u>New ABL Facility</u>.

(i)      The New ABL Facility (A) is an essential element of the Plan, and (B) is in the best interests of the Debtors, their Estates, and their stakeholders.

(ii)      The terms and conditions of the New ABL Documents:  (A) have been negotiated in good faith and at arm's-length, without the intent to hinder, delay, or defraud any of the Debtors' creditors; (B) are fair and reasonable; (C) represent a valid exercise of the Debtors' business judgment consistent with their fiduciary duties; (D) are supported by reasonably equivalent value and fair consideration; and (E) are in the best interests of the Debtors, their Estates, and their stakeholders.  The New ABL Facility, in conjunction with the New First Lien Debt, constitutes the best financing available to the Debtors following an extensive marketing process. The availability of the financing provided by the New ABL Facility is necessary to the consummation of the Plan and the operation of the Reorganized Debtors.

(iii)      The guaranties, pledges, Liens, and security interests granted in connection with the New ABL Documents are being granted in good faith as an inducement to the New ABL Lenders to extend credit thereunder.  The financial accommodations to be extended pursuant to

the New ABL Facility are being extended in good faith, for legitimate business purposes, are reasonable, and shall not be subject to recharacterization for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any applicable nonbankruptcy law.

(iv)    Each party to the New ABL Documents may rely upon the provisions of this Order in implementing the terms of the New ABL Facility.

H.    New First Lien Debt.

(i)    The New First Lien Debt (A) is an essential element of the Plan, and (B) is in the best interests of the Debtors, their Estates, and their stakeholders.

(ii)    The launching, pricing and closing into escrow of the offering of the New First Lien Debt have been conducted in accordance with the Escrow Order, with the gross proceeds placed into escrow to be released upon consummation of the Plan.

(iii)    The terms and conditions of the New First Lien Documents:  (A) have been negotiated in good faith and at arm's-length, without the intent to hinder, delay, or defraud any of the Debtors' creditors; (B) are fair and reasonable; (C) represent a valid exercise of the Debtors' business judgment consistent with their fiduciary duties; (D) are supported by reasonably equivalent value and fair consideration; and (E) are in the best interests of the Debtors, the Estates, and the stakeholders.  The New First Lien Debt, in conjunction with the New ABL Facility, constitutes the best financing available to the Debtors following an extensive marketing process. The financing provided by the New First Lien Debt is necessary to the consummation of the Plan and the operation of the Reorganized Debtors.

(iv)    The guaranties, pledges, Liens, and other security interests granted in connection with the New First Lien Documents are being granted in good faith as an inducement

8

to the holders of New First Lien Debt to extend credit thereunder.  The financial accommodations extended pursuant to the New First Lien Debt have been extended in good faith, for legitimate business purposes, are reasonable, and shall not be subject to recharacterization for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any applicable nonbankruptcy law.

(v)    Each party to the New First Lien Documents may rely upon the provisions of this Order in implementing the terms of the New First Lien Debt.

I.    New Preferred Equity and the New Junior Preferred Equity.

(i)    The issuance of each of the New Preferred Equity and the New Junior Preferred Equity (A) is an essential element of the Plan, and (B) is in the best interests of the Debtors, their Estates, and their stakeholders.

(ii)    The terms and conditions of the New Preferred Equity Documents and the New Junior Preferred Equity Documents:  (A) have been negotiated in good faith and at arm's-length, without the intent to hinder, delay, or defraud any of the Debtors' creditors; (B) are fair and reasonable; (C) represent a valid exercise of the Debtors' business judgment; (D) are supported by reasonably equivalent value and fair consideration; and (E) are in the best interests of the Debtors, their Estates, and their stakeholders.

(iii)    Each party to the New Preferred Equity Documents and the New Junior Preferred Equity Documents may rely upon the provisions of this Order in implementing the terms of the New Preferred Equity and the New Junior Preferred Equity, as applicable.

J.    Plan Supplement. The Filing of the documents constituting the Plan Supplement complied with the terms of the Plan, and the notice of the Filing of such documents was good and proper in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy

Rules, and all other applicable rules, laws, and requirements, and no other or further notice is required. All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into, the Plan. Subject to, and consistent with, the terms of the Plan, the Debtors reserve the right to alter, amend, update, or modify any document in the Plan Supplement before the Effective Date, subject to the applicable consent rights set forth in the Restructuring Support Agreement. Parties in interest (including the holders of Claims and Interests) were provided due, adequate, and sufficient notice of the Plan Supplement.

K.    Good Faith.

(i)    The Plan and the documents contained in or contemplated by the Plan, including the Plan Supplement (collectively, the "Plan Documents"), were proposed and negotiated in good faith and at arm's-length among the Debtors, the Creditor Support Parties, the Sponsor Support Party, the Co-Investors, the Prepetition ABL Agent, the DIP Secured Parties, the New ABL Agent, UBS Securities LLC, and their respective advisors.

(ii)    (A) The Debtors, the Creditor Support Parties, the Sponsor Support Party, and the Co-Investors have participated in good faith in the offer, issuance, sale, and/or purchase of the securities offered under the Plan and (B) the Solicitation was conducted in good faith. Accordingly, all of the foregoing parties are entitled to the protections of section 1125(e) of the Bankruptcy Code.

(iii)    The Plan's classification, indemnification, exculpation, release, and injunction provisions have been negotiated in good faith and at arm's-length, are consistent with sections 105, 1122, 1123(b)(3)(A), 1123(b)(6), 1129, and 1142 of the Bankruptcy Code, and are each integral to the Plan, supported by valuable consideration, and necessary for the Debtors' successful reorganization. The Debtors, the Reorganized Debtors, the Creditor Support Parties,

the Sponsor Support Party, the Co-Investors, the DIP Secured Parties, the Prepetition ABL Agent, and the New ABL Agent have been and will be acting in good faith if they proceed to: (A) consummate the Plan and the agreements, settlements, transactions, and transfers set forth therein; and (B) take any actions authorized by the Plan and this Order.

L.    Notice.  As evidenced by the Affidavits and the Voting Declaration, all parties required to be given notice of the Combined Hearing (including the deadline for filing and serving objections to the Disclosure Statement and the confirmation of the Plan) have been given due, proper, adequate, timely, and sufficient notice of the Combined Hearing in compliance with the Scheduling Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and all applicable nonbankruptcy rules, laws, and regulations, and such parties had an opportunity to appear, be heard and object with respect thereto.   No further or additional notice is necessary.

M.    Plan Modifications.  Adequate and sufficient notice of the modifications to the Original Plan following the solicitation of votes and the Voting Deadline has been given, and no other notice, or re-solicitation of votes is required as the modifications to the Amended Plan constituted technical or clarifying changes, changes with respect to particular Claims by agreement with holders of such Claims, or modifications that do not materially and adversely affect or change the treatment of any Claim or Interest and therefore satisfy the requirements of section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.  The votes cast to accept the Original Plan are deemed to have been cast with respect to the Amended Plan.

N.    Compliance with Section 1129(a) of the Bankruptcy Code.  The Plan complies with all applicable provisions of section 1129 of the Bankruptcy Code as set forth below:

(i)    The Plan complies with all applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1), as follows:

11

(a)     the Plan satisfies: (1) the classification requirements of section 1122 of the Bankruptcy Code, because (x) the Claims and Interests placed in each Class are substantially similar to the other Claims and Interests, as applicable, in each such Class, (y) valid business, factual, and legal reasons exist for placing the various Claims and Interests in separate Classes, and (z) the Plan's classification was not devised for any improper purpose, reflects the valid rights and priorities of the Claims and Interests (including as provided for in the applicable prepetition debt documents and any intercreditor agreements between the holders of Claims), and does not unfairly discriminate against any holders of Claims or Interests and no objections with respect to the classification of the Claims and Interests, the rank and priority of the various Claims or Interests or the intercreditor arrangements governing the Debtors' obligations; and (2) all mandatory requirements of section 1123(a)(1) of the Bankruptcy Code; and

(b)     in accordance with section 1123(b)(3) and Bankruptcy Rule 9019, the Plan, including the releases set forth in Section IX.B of the Plan, constitutes a good-faith compromise and settlement of all Claims, Interests, disputes and controversies relating to the rights of holders of Claims and Interests.

(ii)     The Debtors, as the proponents of the Plan, have complied with all applicable provisions of the Bankruptcy Code and the Bankruptcy Rules, thereby satisfying section 1129(a)(2) of the Bankruptcy Code.

(iii)     The Debtors have proposed the Plan in good faith and not by any means forbidden by law.  The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Estates and effectuating the successful reorganization of the Debtors.  Accordingly, the Plan complies with section 1129(a)(3) of the Bankruptcy Code.

(iv)    Any payment made or to be made by the Debtors or by any person issuing

securities or acquiring property under the Plan for services or costs and expenses in connection

with these cases, or in connection with the Plan and incident to these cases, has been approved by,

or is subject to the approval of, the Court as reasonable.  Accordingly, the Plan complies with the

requirements of section 1129(a)(4) of the Bankruptcy Code.

(v)    The identities of each Person proposed to serve as a director or an officer of

the Reorganized Debtors, including the New Board, were disclosed in the Plan Supplement. The

appointment to, or continuance in, such office of such persons, is consistent with the interests of

creditors and equity security holders and with public policy. To the extent such directors, officers,

and managers are insiders, the nature of their compensation has been disclosed. Accordingly, the

Plan complies with the requirements of section 1129(a)(5) of the Bankruptcy Code.

(vi)    The liquidation analysis attached as Exhibit E to the Disclosure Statement,

the Confirmation Declaration, and other evidence in support of the Plan presented, proffered, or

adduced at the Combined Hearing:   (A) are persuasive and credible; (B) have not been

controverted by other evidence; and (C) establish that each holder of a Claim or Interest in an

Impaired Class either has accepted the Plan or will receive or retain under the Plan, on account of

such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount

that such holder would so receive or retain if the Debtors were liquidated under chapter 7 of the

Bankruptcy Code on such date.  Accordingly, the Plan complies with the requirements of section

1129(a)(7) of the Bankruptcy Code.

(vii)    As set forth in the Voting Declaration, Claims in Class 4 (Secured Notes

Claims) and Class 6 (Unsecured Notes Claims) are Impaired, and the holders thereof have accepted

the Plan in accordance with section 1126(c) of the Bankruptcy Code. However, Class 10 (Existing

Common Equity) and, potentially, Class 8 (Intercompany Claims) and Class 9 (Intercompany Interests) (collectively, the "Rejecting Classes") are Impaired, and the holders of Claims or Interests in such Classes are conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Thus, the Plan does not satisfy section 1129(a)(8) of the Bankruptcy Code.  Nevertheless, the Plan is still confirmable because it satisfies section 1129(b) of the Bankruptcy Code.

(viii)    Claims entitled to priority under section 507 of the Bankruptcy Code are Unimpaired under the Plan.  As such, the Plan complies with the requirements of section 1129(a)(9) of the Bankruptcy Code.

(ix)    As set forth in the Voting Declaration, both Class 4 (Secured Notes Claims) and Class 6 (Unsecured Notes Claims) voted to accept the Plan without counting the votes of insiders.  Accordingly, the Plan complies with section 1129(a)(10) of the Bankruptcy Code.

(x)    The information in the Disclosure Statement, including the financial projections set forth in Exhibit D to the Disclosure Statement, the Confirmation Declaration, and the evidence proffered or adduced at the Combined Hearing: (A) are persuasive and credible; (B) have not been controverted by other evidence; and (C) together with the record of these cases and the evidence presented at the Combined Hearing, establish that (1) there is a reasonable prospect that the Reorganized Debtors will be able to meet their financial obligations under the Plan as well as their business obligations in the ordinary course, (2) the incurrence of the obligations contemplated by the Plan will not result in the insolvency of the Debtors, and (3) confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Reorganized Debtors.  Accordingly, the Plan satisfies section 1129(a)(11) of the Bankruptcy Code.

(xi)     Article II.A.1.b of the Plan provides that:  (A) all fees payable pursuant to 28 U.S.C. § 1930 shall be paid in full by the Debtors on or before the Effective Date and (B) all such fees payable after the Effective Date shall be paid by the Reorganized Debtors until the closing of the applicable case pursuant to section 350(a) of the Bankruptcy Code.  Accordingly, the Plan satisfies section 1129(a)(12) of the Bankruptcy Code.

(xii)    Sections 1129(a)(6) and (13) through (16) of the Bankruptcy Code are not applicable to the Plan.

O.     <u>Compliance with Section 1129(b) of the Bankruptcy Code</u>.  Because the Plan complies with all applicable provisions of section 1129(a) of the Bankruptcy Code except for section 1129(a)(8), the Debtors are seeking confirmation of the Plan under section 1129(b) of the Bankruptcy Code.  As set forth below, the Plan complies with the requirements of section 1129(b) of the Bankruptcy Code with respect to each Rejecting Class.

(i)     The Plan does not "discriminate unfairly" against the Rejecting Classes because:  (A) the Claims and Interests in each Rejecting Class are legally distinct from the Claims and Interests in all other Classes; and (B) the Plan does not treat any Rejecting Class differently from any similar Class.

(ii)    The Plan is "fair and equitable" with respect to the Rejecting Classes because:  (A) the Plan does not provide a recovery on account of any Claim or Interest that is junior to the Claims and Interests, as applicable, in the Rejecting Classes; and (B) no holder of Claims and Interests, as applicable, in any Class that is senior to the Rejecting Classes is being paid more than in full.

P.     <u>Section 1129(d)</u>.  As set forth in the Confirmation Declaration, the principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5

of the Securities Act, and no governmental entity has objected to the confirmation of the Plan on any such grounds. The Plan, therefore, satisfies the requirements of section 1129(d) of the Bankruptcy Code.

Q.    <u>Releases, Exculpation and Injunction</u>. The Court has jurisdiction under sections 1334(a) and (b) of title 28 of the United States Code and authority under section 105 of the Bankruptcy Code to approve the release, exculpation, and injunction provisions set forth in the Plan. As established by the record of these cases and the evidence proffered or adduced at the Combined Hearing, (1) such provisions: (A) comply with section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019(a); (B) were given in exchange for good and valuable consideration; (C) were integral to the agreements among the various parties in interest and are an integral and necessary part of the formulation and implementation of the Plan; (D) confer substantial benefits on the Estates; (E) are fair, equitable, and reasonable; and (F) are in the best interests of the Debtors, their Estates, and their stakeholders; and (2) failure to implement these provisions would jeopardize the Debtors' ability to confirm and implement the Plan. In addition to the foregoing:

(i)    The releases in Article IX.B.1 of the Plan (the "<u>Debtor Releases</u>"): (a) represent a valid exercise of the Debtors' business judgment; (b) constitute a good faith settlement and compromise of the released claims and Causes of Action, (c) are given and made after due notice and opportunity for hearing; and (d) are a bar to any of the Debtors, the Reorganized Debtors, or the Estates asserting any claim or Cause of Action released thereby.

(ii)    The releases in Article IX.B.2 of the Plan (the "<u>Third-Party Releases</u>") are consensual under applicable law because they are being given only by: (a) those parties that were participants in the formulation and negotiations of the Plan, (b) holders of Claims who voted to

accept the Plan; (c) holders of Claims in Classes deemed to accept the Plan; (d) holders of Claims

in voting classes who abstained from voting on the Plan and who did not opt out of these releases;

(e) holders of Claims in voting classes who voted to reject the Plan and who did not opt out of

these releases; (f) all other holders of Claims and Interests to the fullest extent permitted by law;

and (g) certain related parties of the foregoing entities.

(iii)    In addition, the Third-Party Releases: (a) constitute a good faith settlement

and compromise of the claims and Causes of Action released thereby; (b) are given and made after

due notice and opportunity for hearing and to object; (c) were critical in incentivizing parties in

interest to support the Plan; (d) were a core negotiation point in connection with the Restructuring

Support Agreement; (e) are appropriately tailored under the facts and circumstances of these cases,

(f) are a bar to any of the Releasing Parties asserting any claim, Claim, or Cause of Action released

thereby; (g) are consistent with sections 524, 1123, 1129, and 1141 and other applicable provisions

of the Bankruptcy Code; and (h) are overwhelmingly supported by the holders of Claims in the

Classes entitled to vote on the Plan.

(iv)    The release provisions of the Plan were conspicuous and emphasized with

boldface type in the Plan, the Disclosure Statement and the Ballots.

(v)    The exculpation granted to the Exculpated Parties under the Plan is

reasonable in scope and does not relieve any Exculpated Party of liability for an act or omission to

the extent such act or omission is determined in a final order to have constituted actual fraud,

willful misconduct, or gross negligence.

R.    Compromises and Settlements.    The compromises and settlements embodied in the

Plan are fair, equitable, and in the best interests of the Debtors and their Estates.    Such

compromises and settlements are integral to the Plan.    Based upon the representations and

arguments of counsel to the Debtors, all testimony either actually given or proffered, other evidence introduced at the Combined Hearing and the full record of these cases, this Order constitutes approval of the compromises and settlements contained within the Plan because, among other things: (i) such compromises and settlements reflect a reasonable balance between the possible success of litigation with respect to each of the settled claims and disputes, on the one hand, and the benefits of fully and finally resolving such claims and disputes and allowing the Debtors to expeditiously exit chapter 11 and consummate the transactions contemplated by the Restructuring Support Agreement and the Plan, which are in the best interests of the Debtors and their Estates, on the other hand; (ii) absent the compromises and settlements, there is a possibility of complex and protracted litigation, with the attendant expense, inconvenience and delay, that has a possibility to derail the Debtors' reorganization efforts and a loss of the benefits to the Debtors and their Estates of the transactions contemplated by the Restructuring Support Agreement and the Plan; (iii) each party supporting such compromises and settlements, including the Debtors, the Creditor Support Parties, the Sponsor Support Parties, the Co-Investors, the DIP Secured Parties and the Prepetition ABL Agent, is represented by counsel that is recognized as being knowledgeable, competent, and experienced; (iv) such compromises and settlements are the product of arm's-length bargaining and good faith negotiations between sophisticated parties; (v) such compromises and settlements are fair, equitable, reasonable, and in the best interests of the Debtors, the Reorganized Debtors, the Estates, the Debtors' creditors, and other parties in interest; (vi) such compromises and settlements resolve the respective rights and recoveries between the holders of Claims under the Prepetition ABL Facility, on the one hand, and under the Indentures, on the other hand, in connection with prepetition debt issuances and related agreements; and (vii) such compromises and settlements will maximize the value of the Estates

for the benefit of all stakeholders.  Based on the foregoing, the compromises and settlements contained within the Plan satisfy the applicable standards for approval of compromises and settlements.

S.    <u>Treatment of Executory Contracts and Unexpired Leases</u>.    The Debtors' determinations regarding the assumption or rejection, as applicable, of Executory Contracts and Unexpired Leases represent a valid exercise of the Debtors' business judgment, are necessary to implement the Plan and are in the best interests of the Debtors, their Estates, holders of Claims and Interests, and other stakeholders.    The Confirmation Declaration, the representations and arguments of counsel, and all evidence presented, proffered, or adduced at the Combined Hearing establish that, with respect to each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan, including those listed in the Schedule of Assumed Contracts:  (1) the Debtors shall have Cured (or demonstrated adequate assurance that they will promptly Cure) all monetary defaults under such Executory Contracts or Unexpired Leases as of the Effective Date or at such other times and on such other terms as agreed with the non-Debtor party to such Executory Contract or Unexpired Lease or ordered by the Court; and (2) the Debtors have provided adequate assurance of future performance under such Executory Contracts and Unexpired Leases. Accordingly, the Debtors have satisfied the requirements of section 365 in respect of the Executory Contracts and Unexpired Leases to be assumed pursuant to the Plan.

## <u>ORDER</u>

**ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:**

1.      <u>Findings of Fact and Conclusions of Law</u>.  The above findings of fact and conclusions of law, as well as any additional findings of fact and conclusions of law announced by this Court at the Combined Hearing, are hereby incorporated into this Order.

2.      <u>Final Approval of Disclosure Statement</u>.  The Disclosure Statement is approved on a final basis as having adequate information as contemplated by section 1125(a)(1) of the Bankruptcy Code.  To the extent that any objections (including any reservations of rights contained therein) to approval of the Disclosure Statement or other responses or reservations of rights with respect thereto have not been withdrawn prior to entry of this Order, such objections and responses shall be, and hereby are, overruled on the merits and denied.

3.      <u>Confirmation of the Plan</u>.  The Plan attached to this Order as <u>Exhibit A</u> is approved in its entirety and confirmed pursuant to section 1129 of the Bankruptcy Code.  The documents contained in or contemplated by the Plan, including the other Plan Documents, are hereby approved, and the Debtors are authorized to execute, deliver and perform under each of the Plan Documents.  The terms and provisions of the Plan are incorporated herein by reference and constitute an integral part of this Order.  The failure to specifically include or refer to any particular article, section, or provision of the Plan or the Plan Documents in this Order shall not diminish or impair the effectiveness or enforceability of such article, section, or provision nor constitute a waiver thereof, it being the intent of this Court that the Plan is confirmed in its entirety.

4.      <u>Binding Effect</u>.  The terms of the Plan and the other Plan Documents including, for the avoidance of doubt, the documents and instruments contained in the Plan Supplement) shall be immediately effective and enforceable and deemed binding on the Debtors, the Reorganized Debtors, any and all holders of Claims or Interests (irrespective of whether holders of such Claims or Interests have, or are deemed to have, accepted the Plan and whether such claims are known or

unknown, including, but not limited to all contract counterparties, borrowers, and leaseholders),

any trustees, examiners, administrators, responsible officers, estate representatives, or similar

entities for the Debtors, if any, subsequently appointed in any of the Chapter 11 Cases or upon a

conversion to chapter 7 under the Bankruptcy Code of any of the Chapter 11 Cases, all Entities

that are parties to or subject to the settlements, compromises, releases, discharges, and injunctions

contained in the Plan, each Entity acquiring property under the Plan, any and all non-Debtor parties

to Executory Contracts and Unexpired Leases, and each of their respective affiliates, successors,

and assigns, as of the Effective Date.  Pursuant to the applicable provisions of the General

Corporation Law of the State of Delaware, other applicable nonbankruptcy law, and section

1142(b) of the Bankruptcy Code, no action of the respective directors or stockholders of the

Debtors shall be required to authorize the Debtors or the Reorganized Debtors, as applicable, to

enter into, execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may

be, the Plan or any Plan Document.  Subject to the terms of the Plan, the Debtors reserve the right

to alter, amend, update, or modify the Plan Documents prior to the Effective Date, subject to the

applicable consent rights set forth in the Restructuring Support Agreement.

5.      <u>Objections</u>.  To the extent that any objections (including any reservations of rights

contained therein) to the adequacy of the Disclosure Statement, confirmation of the Plan,

assumption or rejection of Executory Contracts and Unexpired Leases, or other responses or

reservations of rights with respect to any of the foregoing have not been withdrawn prior to entry

of this Order, such objections and responses shall be, and hereby are, overruled on the merits and

denied.

6.      <u>Governmental Approvals Not Required</u>.  This Order shall constitute all approvals

and consents that are or may be required by the laws, rules, or regulations of any state or any other

governmental authority with respect to the dissemination, implementation and consummation of

the Plan, the other Plan Documents and any other act referred to in, or contemplated by, the Plan

or other Plan Documents or that may be necessary or appropriate for the implementation or

consummation of the Plan or the other Plan Documents (subject to the applicable consent rights

set forth in the Restructuring Support Agreement).

       7.      <u>Implementation of the Plan</u>.

       a.      Upon entry of this Order, the Debtors and the Reorganized Debtors, as

applicable, and the appropriate officers, members of the boards of directors or managers,

managers, general partners or managing members thereof, as applicable:  (i) are authorized to

execute, deliver, issue, file, or record such documents, contracts, instruments, releases, and other

agreements, including the Plan Documents; and (ii) take such other actions as may be reasonably

necessary or appropriate to effectuate, implement, and further evidence the terms and conditions

of the Plan, the Plan Documents and the transactions contemplated thereby, including the filing of

appropriate certificates or articles of incorporation, formation, reincorporation, merger,

consolidation, conversion, amalgamation, arrangement, continuance, or dissolution pursuant to

applicable or the making of any filings or recordings that may be required by applicable law in

connection with the Plan, in each case, subject to any conditions precedent included in the

applicable Plan Document.  Such actions shall include the Restructuring Transactions and all other

actions set forth in Article IV of the Plan or as otherwise contemplated by or in accordance with

the Plan, including the merger, consolidation, disposition, contribution, liquidation, conversion, or

dissolution of any Debtor as set forth in the Description of Restructuring Transactions attached as

<u>Exhibit I</u> to the Plan Supplement, including any alternative set forth therein.  Upon entry of this

Order, all such actions and transactions (1) are hereby approved without the need for additional

corporate authorization or action and (2) if not previously implemented, shall be deemed taken on the Effective Date in the order set forth in the Description of Restructuring Transactions, or on such later date in accordance with the Plan and the other Plan Documents.

b.        In accordance with the Description of Restructuring Transactions (as such are finally determined to be implemented by the Debtors and the Reorganized Debtors):  (1) either (x) Guitar Center Holdings, Inc. ("Holdings") shall be deemed dissolved as of January 30, 2021, or (y) the Reorganized Debtors shall be authorized to dissolve and wind up Holdings in accordance with applicable nonbankruptcy law, (2) the Reorganized Debtors shall be authorized to administer and satisfy the Allowed Claims against Holdings, and (3) the officers of Holdings as of the Effective Date (or such replacements as appointed by the Reorganized Debtors) shall remain as officers of Holdings to take all actions in connection with such dissolution, in each case without further notice to or action, order or approval by the Court or any other Entity, including preparing and filing any contract, instrument, agreement, tax return or other document in connection therewith.  Any remaining assets and liabilities of Holdings shall be assigned in accordance with the Restructuring Transactions (as such are finally determined to be implemented by the Debtors and the Reorganized Debtors).

c.        Upon entry of this Order, the Restructuring Transactions and all other transactions contemplated by the Plan shall be permitted to occur without any additional notice, consent or other action or consequence under any of the assumed Executory Contracts or Unexpired Leases.

8.        No Adverse Consequence.  Except as otherwise provided in the Plan or this Order, any term of any prepetition policy, contract, or other obligation applicable to a Debtor shall be void and of no further force or effect with respect to such Debtor or the applicable Reorganized

Debtor to the extent that such policy, contract or other obligation is conditioned on, creates an

obligation as a result of, or gives rise to a right of any Entity based on: (i) the insolvency or financial

condition of a Debtor; (ii) the commencement of these cases; (iii) the confirmation or

consummation of this Plan, including any change of control that occurs as a result of such

consummation; or (iv) the Restructuring Transactions and the other transactions contemplated by

the Plan.  This provision shall not be deemed a finding that either notice or consent is required

under any Executory Contract or Unexpired Lease or that any rights or obligations would be

triggered by the Restructuring Transactions or the other transactions contemplated by the Plan.

        9.    <u>Executory Contracts and Unexpired Leases</u>.

        a.    The procedures for the assumption, assumption and assignment and

rejection of Executory Contracts and Unexpired Leases set forth in the Plan and the Scheduling

Order, as modified by this Order, are hereby approved in all respects on a final basis.  The Debtors'

determinations regarding the assumption or rejection of Executory Contracts and Unexpired

Leases are based on and within the sound business judgment of the Debtors, are necessary to the

implementation of the Plan and are in the best interests of the Debtors, their Estates, holders of

Claims and Interests, and other parties in these cases.

        b.    As of and subject to the occurrence of the Effective Date and, where

applicable, the payment of any applicable Cure in accordance with Article V.B of the Plan, entry

of this Order shall constitute:  (i) approval of the assumptions, assumptions and assignments

(including any amendments to any assumed Executory Contracts or Unexpired Leases agreed upon

by the parties to such Executory Contracts and Unexpired Leases) and rejections of the Executory

Contracts and Unexpired Leases pursuant to sections 365(a) and 1123 of the Bankruptcy Code;

and (ii) a determination by the Court that the Reorganized Debtors have provided adequate assurance of future performance under such assumed Executory Contracts and Unexpired Leases.

c. As of and subject to the occurrence of the Effective Date and the payment of any applicable Cure in accordance with Article V.B of the Plan, all Executory Contracts and Unexpired Leases (including any amendments the parties to such Executory Contracts and Unexpired Leases may agree upon) shall be deemed assumed by the applicable Reorganized Debtor in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, unless such contract or lease:  (i) was previously assumed or rejected by the Debtors pursuant to a Final Order of this Court; (ii) previously expired or terminated pursuant to its own terms; (iii) is the subject of a motion to reject filed by the Debtors on or before the Confirmation Date; (iv) is listed on the Schedule of Rejected Contracts; or (v) is otherwise rejected pursuant to the terms of the Plan; *provided* that the Debtors may only amend the Schedule of Rejected Contracts to add an Unexpired Lease after the date of entry of this Order with the consent of the applicable landlord; *provided further however* that any landlord that did not formally or informally object to the Plan or the assumption or rejection of its applicable Unexpired Lease shall be deemed to have consented to the Debtors' right to amend the Schedule of Rejected Contracts to add its Unexpired Lease after the date of entry of this Order.

d. In accordance with Article V.B of the Plan, the Debtors or the Reorganized Debtors, as applicable, shall pay, in Cash, all amounts necessary to satisfy the monetary defaults under each Executory Contract and Unexpired Lease that is being assumed under the Plan on the Effective Date or at such times and on such other terms as the parties to such Executory Contracts or Unexpired Leases may agree; *provided* that to the extent there is a dispute as to the amount of

Cure to be paid, the disputed portion of such Cure shall be paid in accordance with Article V.B.3 of the Plan.

e.       If a counterparty to an Executory Contract or Unexpired Lease disputes (i) that the amount of Cure paid by the Debtors on the Effective Date is sufficient to cure all monetary defaults as of the Effective Date, or (ii) any other matter pertaining to the cure payment required by section 365(b)(1) of the Bankruptcy Code, such counterparty shall raise such dispute with the Debtors or Reorganized Debtors, as applicable, not later than 30 days after the Effective Date.  To the extent the Reorganized Debtors and a counterparty cannot resolve such dispute consensually: (a) the non-Debtor counterparty shall file a Proof of Claim no later than 60 days after the Effective Date; (b) no disputed portion of the Cure shall be paid until entry of a Final Order resolving the dispute and approving the assumption; and (c) such dispute shall not prevent or delay implementation of the Plan or the occurrence of the Effective Date.  If a Proof of Claim is filed in accordance with Article V.B.3 of the Plan, the Debtors or the Reorganized Debtors, as applicable, shall, not later than 45 days after such Proof of Claim is filed, either:  (x) file an objection to such Proof of Claim; or (y) file a request to schedule a status conference before this Court in regards to such Proof of Claim.  Unless the Debtors have filed an objection or a request in accordance with the prior sentence, the amount of Cure asserted in such Proof of Claim shall be Allowed, and the Reorganized Debtors shall promptly pay such additional Cure.

f.       Upon this Court's resolution of a Cure dispute pursuant to Article V.B.3 of the Plan, to the extent such resolution requires a materially different Cure payment than the one proposed by the Reorganized Debtors (it being agreed that a difference of 25% or more from the Debtors' proposed Cure is material), the Reorganized Debtors shall have three (3) Business Days

to determine whether they wish to assume or reject the applicable Executory Contract or Unexpired

Lease (notwithstanding the limitations in the provisos contained in Paragraph 9(c) of this Order).

        g.     If no dispute is timely raised or no Proof of Claim is timely filed in

accordance with Article V.B.3 of the Plan, then the Cure paid by the applicable Debtor shall be

binding on the applicable counterparty and any amount in excess of the Cure paid by the applicable

Debtor shall be Disallowed for all purposes, and such counterparty shall have no right to assert or

pursue such claim against the Debtors, their Estates, the Reorganized Debtors or the respective

properties of the foregoing.

        h.     Subject to the payment of the applicable Cure, if any, each Executory

Contract and Unexpired Lease assumed pursuant to the Plan shall vest in and be fully enforceable

by the applicable Reorganized Debtor in accordance with its terms, except as modified by the

provisions of the Plan, any Final Order of this Court, applicable law, or any amendments the parties

to such Executory Contracts and Unexpired Leases agree upon.  Nothing in the Plan shall release,

discharge, extinguish or impair any Lien, security interest, or pledge or any contractual right or

remedy granted in favor of the counterparty under any Executory Contract or Unexpired Lease

assumed pursuant to Article V.A of the Plan.  Notwithstanding anything herein to the contrary,

upon assumption of an Unexpired Lease, the Debtors or Reorganized Debtors, as applicable, shall

be obligated to pay or perform any accrued but unbilled obligations under such Unexpired Lease

in accordance with the terms of such Unexpired Lease including, but not limited to, common area

maintenance charges, taxes, year-end adjustments, and indemnity obligations required to be paid

under such Unexpired Lease in accordance with the terms of such Unexpired Lease, regardless of

whether such obligations arose before or after the Petition Date.

i.      To the extent any provision (including, without limitation, any "change of control" provision) in any Executory Contract or Unexpired Lease assumed pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption of such Executory Contract or Unexpired Lease, including as a result of any of the Restructuring Transactions, then such provision shall be deemed modified such that the assumption contemplated by the Plan shall not entitle the counterparty thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto, except for asserting and pursuing a Cure claim.

j.      All Executory Contracts and Unexpired Leases listed on the Schedule of Rejected Contracts, as well as any additional Executory Contracts and Unexpired Leases the Debtors or the Reorganized Debtors may decide to reject in accordance with Article V.B of the Plan, shall be deemed rejected as of the latest of:  (i) the Effective Date; (ii) the date set forth in the Schedule of Rejected Contracts, *provided* that such date shall be no later than the Effective Date without the consent of the applicable landlord; (iii) the date on which the Debtors make the determination to reject such Executory Contract or Unexpired Lease in accordance with Article V.B of the Plan; and (iv) with respect to an Unexpired Lease, the date on which the Debtors inform the landlord that they have vacated the leased premises and either deliver any applicable keys, key codes and/or alarm codes to the landlord  or notify the landlord that they may enter and re-let the premises (such date, the "Rejection Date").  Any landlord that has received notice of the Schedule of Rejected Contracts and did not object (formally or informally) to the Rejection Date set forth on such schedule shall be deemed to have consented to such Rejection Date for the purposes of clause (ii) above; *provided that* with respect to any Unexpired Lease that is subsequently added to the Schedule of Rejected Contracts, the applicable landlord shall have 10 days to object to the

28

proposed Rejection Date; absent such timely objection, such landlord shall be deemed to have consented to the proposed Rejection Date for the purposes of clause (ii) above.

k.        The Plan Supplement constituted sufficient notice of the rejection of the Executory Contracts and Unexpired Leases listed in the Schedule of Rejected Contracts.  Pursuant to 11 U.S.C. § 554(a), the Debtors are authorized to abandon, and are deemed to have abandoned, any remaining personal property located on the premises associated with a rejected Unexpired Lease as of the Rejection Date (the "Abandoned Property"), free and clear of all liens, claims, interests, or other encumbrances. The applicable landlords or their designees may, after the Rejection Date, in their sole discretion and without further delay, utilize and/or dispose of such Abandoned Property without notice or liability to any party and without further order of the Court.

l.        All Proofs of Claim on account of the rejection of Executory Contracts and Unexpired Leases shall (a) be filed no later than thirty (30) days after the Rejection Date, and (b) constitute General Unsecured Claims and shall be treated in accordance with Article II.C.7 of the Plan, subject to any applicable limitation or defense under the Bankruptcy Code and applicable law.  The Reorganized Debtors shall have the right to object to, settle, compromise or otherwise resolve any Claim asserted on account of a rejected Executory Contract or Unexpired Lease.

m.        **To the extent any non-Debtor counterparty to an Executory Contract or an Unexpired Lease that is being rejected under the Plan fails to timely file a Proof of Claim as set forth above:  (i) any amount on account of such counterparty's rejection damages shall be Disallowed for all purposes; (ii) and such counterparty shall have no right to assert or pursue such claim against the Debtors, the Estates, the Reorganized Debtors, or the respective properties of the foregoing; and (iii) any Claim arising out of the rejection of**

**such Executory Contract or Unexpired Lease shall be deemed satisfied, released, and discharged.**

n.  <u>Agreement with LBA Realty Fund III-Company XII, LLC</u>.  The rejection date with respect to that certain Multi-Tenant Office Lease, dated September 1, 2011 (the "<u>Thousand Oaks Lease</u>"), by and between Landlord LBA Realty Fund III-Company XII, LLC, as landlord ("<u>Thousand Oaks Landlord</u>"), and Guitar Center, Inc., as tenant, shall be the later of (i) January 31, 2021 and (ii) the date on which the Debtors inform the Thousand Oaks Landlord that they have vacated the leased premises and either deliver any applicable keys, key codes and/or alarm codes to the landlord or notify the Thousand Oaks Landlord that they may enter and re-let the premises (the "<u>Thousand Oaks Rejection Date</u>").  The Debtors shall be deemed to have abandoned, any remaining personal property located at the premises in respect of the Thousand Oaks Lease as of the Rejection Date applicable to the Thousand Oaks Lease (the "<u>Thousand Oaks Rejection Date</u>"), free and clear of all liens, claims, interests, or other encumbrances and the Thousand Oaks Landlord or its designee may, after such Thousand Oaks Rejection Date, in their sole discretion and without further delay, notice to any party or order of this Court, utilize and/or dispose of such Abandoned Property without notice or liability to any party and without further order of the Court.  The Debtors and the Thousand Oaks Landlord agree that the Allowed amount of the claim in connection with the Thousand Oaks Lease shall be $[_____].

10.  <u>Effect of Plan and This Order on Union Agreements</u>. Nothing in the Plan or this Order shall be deemed to amend, supplement or otherwise modify any provision of any union agreements or other arrangements with unions that may exist as of the date of commencement of these cases.

11.    <u>Approval of the New Organizational Documents</u>.  The New Corporate Governance Documents (including the New Preferred Equity Documents and the New Junior Preferred Documents) and the organizational documents of each other Debtor or Reorganized Debtor, as they may be amended, amended and restated, supplemented or otherwise modified in connection with the Restructuring Transactions, the Plan, and the other transactions contemplated thereby (subject to the applicable consent rights set forth in the Restructuring Support Agreement), are hereby approved in all respects.  The obligations of the applicable Reorganized Debtors related thereto, will, upon execution, constitute legal, valid, binding, and authorized obligations of such Reorganized Debtors, enforceable in accordance with their terms and not in contravention of any state or federal law.  The Debtors and the Reorganized Debtors are hereby authorized, without further approval of the Court or any other party, to execute and deliver all agreements, documents, instruments, and certificates relating to the New Corporate Governance Documents and the organizational documents of each other Reorganized Debtor, as they may be amended, amended and restated, supplemented or otherwise modified in connection with the Restructuring Transactions, the Plan, and the other transactions contemplated thereby (subject to the applicable consent rights set forth in the Restructuring Support Agreement), and take such other actions as reasonably deemed necessary to perform their obligations thereunder.

12.    <u>Stockholders Agreement</u>.  The stockholders agreement of Reorganized Guitar Center, a substantially final form of which is attached as <u>Exhibit A-3</u> to the Plan Supplement (the "<u>Stockholders Agreement</u>") shall be effective on the Effective Date of the Plan, operative and binding on, and enforceable against, Reorganized Guitar Center and all holders of New Common Equity and Warrants of Reorganized Guitar Center.

13.    <u>New Preferred Equity and New Junior Preferred Equity Tag-Along Agreement</u>. A tag-along agreement of Reorganized Guitar Center, which will include the terms and conditions in Annex A of the stockholders agreement of Reorganized Guitar Center attached as <u>Exhibit A-3</u> to the Plan Supplement (the "<u>Tag-Along Agreement</u>") shall be effective on the Effective Date of the Plan, operative and binding on, and enforceable against, Reorganized Guitar Center and all holders of New Common Equity, New Preferred Equity and New Junior Preferred Equity of Reorganized Guitar Center, whether or not such holder executes the Tag-Along Agreement.

14.    <u>New ABL Facility</u>.

a.    On the Effective Date, the Reorganized Debtors are authorized to execute and deliver the New ABL Documents and to perform their obligations thereunder, including the payment or reimbursement of all applicable fees, expenses, other payments, losses, damages or indemnities under the New ABL Documents.  Upon their execution, the New ABL Documents shall constitute legal, valid, binding, and authorized joint and several obligations of the applicable Reorganized Debtors enforceable in accordance with their respective terms, and such indebtedness and obligations shall not be, and shall not be deemed to be, enjoined or subject to challenge, discharge, impairment, release, avoidance, recharacterization, or subordination.

b.    On the Effective Date, all Liens, deeds of trust, pledges, and other security interests granted pursuant to, or in connection with the New ABL Documents shall:  (1) be valid, binding, perfected, enforceable (A) first priority Liens subject to Permitted Encumbrances (as defined in the New ABL Agreement) on and security interests in the "ABL Priority Collateral" (as such term shall be defined in an Intercreditor Agreement to be entered in connection with effectuating the Plan (the "<u>Intercreditor Agreement</u>") by and among Wells Fargo Bank, National Association, as ABL Agent, and U.S. Bank, National Association, as Notes Collateral Agent, and

as acknowledged by the Debtors) and (B) second priority Liens subject to Permitted Encumbrances on and security interests in the "Notes Priority Collateral" (as defined in the Intercreditor Agreement); (2) have the priorities established by applicable nonbankruptcy law, the New ABL Documents and any applicable intercreditor agreements, including the Intercreditor Agreement; (3) be deemed fully perfected on the Effective Date; and (4) not be, and shall not be deemed to be, enjoined or subject to challenge, discharge, impairment, release, avoidance, recharacterization, or subordination.  For the avoidance of doubt, in no event shall a Lien, pledge or security interest be granted under the New ABL Documents (A) on an Unexpired Lease to the extent such grant would constitute or result in (i) the abandonment, cancellation, invalidation or unenforceability of any right, title or interest of any Debtor or Reorganized Debtors in such Unexpired Lease or (ii) a breach or termination pursuant to the terms of, or a default under, any lease (including such Unexpired Lease), contract, property rights agreement or license (other than to the extent that any restriction on such assignment would be ineffective pursuant to applicable law, including, to the extent applicable, Sections 9-406, 9-407, 9-408 or 9-409 of the UCC (or any successor provision or provisions) of any relevant jurisdiction or principles of equity), (B) on the Thousand Oaks Lease, *provided that* such Lien shall attach to the proceeds of any such Unexpired Lease.  For the further avoidance of doubt (1) the Lien, pledge or security interests granted under the New ABL Documents will not attach to, or constitute a direct lien on, any landlord's fee interest in property leased to the Reorganized Debtors (as opposed to the leasehold interest of the Reorganized Debtor) and (2) nothing in this Order shall be deemed consent by a landlord to the granting of a Lien, pledge, or security interest by the Reorganized Debtors.

      c.     All Bank Products, Cash Management Services and Letters of Credit issued or provided by (1) the Prepetition ABL Agent under the Prepetition ABL Credit Agreement (and

each as defined therein), which were deemed under the DIP Order to be issued under the ABL DIP

Credit Agreement and to constitute ABL DIP Obligations, or (2) the ABL DIP Agent under the

ABL DIP Credit Agreement, and all obligations under or in connection with the foregoing shall

be automatically deemed issued under the New ABL Facility and shall constitute obligations under

the New ABL Facility in accordance with the terms and conditions thereof.

          d.      The Reorganized Debtors and the New ABL Agent are authorized to make

all filings and recordings, and to obtain all governmental approvals and consents to evidence,

establish, continue and perfect any and all financing statements and other documents, amendments

thereto, or assignments thereof evidencing the Liens and security interests granted in connection

with the New ABL Facility under the provisions of the applicable state, provincial, federal or other

law (whether domestic or foreign) that would be applicable in the absence of the Plan and this

Order (it being understood that perfection of the liens and security interests granted under the New

ABL Documents shall occur automatically on the Effective Date by virtue of the entry of this

Order, and any such filings, recordings, approvals and consents shall not be necessary or required),

and the Reorganized Debtors shall thereafter reasonably cooperate to make all other filings and

recordings that otherwise would be necessary under applicable law or are reasonably requested by

the New ABL Agent to give notice of such financing statements and other documents, amendments

thereto, or assignments thereof evidencing the Liens and security interests granted in connection

with the New ABL Facility.

        15.     <u>New First Lien Debt</u>.

          a.      On the Effective Date, the Reorganized Debtors are authorized to execute

and deliver the New First Lien Documents and to perform their obligations thereunder, including

the payment or reimbursement of all applicable fees, expenses, other payments, losses, damages

or indemnities under the New First Lien Documents.  Upon their execution, the New First Lien Documents shall constitute legal, valid, binding, and authorized joint and several obligations of the applicable Reorganized Debtors, enforceable in accordance with their respective terms, and such indebtedness and obligations shall not be, and shall not be deemed to be, subject to challenge, discharge, impairment, release, avoidance, recharacterization, or subordination.

b.    On the Effective Date, all Liens, deeds of trust, pledges and other security interests granted pursuant to or in connection with the New First Lien Documents shall:  (1) be valid, binding, perfected, enforceable (A) first priority Liens subject to Permitted Liens (as defined in the New First Lien Indenture) on and security interests in the "Notes Priority Collateral" (as defined in the Intercreditor Agreement) and (B) second priority Liens subject to Permitted Liens on and security interests in the "ABL Priority Collateral" (as defined in the Intercreditor Agreement); (2) have the priorities established under applicable nonbankruptcy law, the New First Lien Documents and any applicable intercreditor agreements, including the Intercreditor Agreement; (3) be deemed fully perfected on the Effective Date; and (4) not be, and shall not be deemed to be, enjoined or subject to challenge, discharge, impairment, release, avoidance, recharacterization, or subordination.  For the avoidance of doubt, in no event shall a Lien, pledge or security interest be granted under the New First Lien Documents (A) on an Unexpired Lease to the extent such grant would constitute or result in (i) the abandonment, cancellation, invalidation or unenforceability of any right, title or interest of any Debtor or Reorganized Debtors in such Unexpired Lease or (ii) a breach or termination pursuant to the terms of, or a default under, any lease (including such Unexpired Lease), contract, property rights agreement or license (other than to the extent that any restriction on such assignment would be ineffective pursuant to applicable law, including, to the extent applicable, Sections 9-406, 9-407, 9-408 or 9-409 of the UCC (or any

successor provision or provisions) of any relevant jurisdiction or principles of equity), (B) on the Thousand Oaks Lease, *provided* that such Lien shall attach to the proceeds of any such Unexpired Lease.  For the further avoidance of doubt (1) the Lien, pledge or security interests granted under the New First Lien Documents will not attach to, or constitute a direct lien on, any landlord's fee interest in property leased to the Reorganized Debtors (as opposed to the leasehold interest of the Reorganized Debtor) and (2) nothing in this Order shall be deemed consent by a landlord to the granting of a Lien, pledge, or security interest by the Reorganized Debtors.

c.      The Reorganized Debtors and the Collateral Agent or its designee (as defined in the New First Lien Indenture) under the New First Lien Indenture are authorized to make all filings and recordings, and to obtain all governmental approvals and consents to evidence, establish, continue and perfect any and all financing statements and other documents, amendments thereto, or assignments thereof evidencing the Liens and security interests granted in connection with the New First Lien Debt under the provisions of the applicable state, provincial, federal or other law (whether domestic or foreign) that would be applicable in the absence of the Plan and this Order (it being understood that perfection of the liens and security interests granted under the New First Lien Documents shall occur automatically on the Effective Date by virtue of the entry of this Order, and any such filings, recordings, approvals and consents shall not be necessary or required), and the Reorganized Debtors shall thereafter reasonably cooperate to make all other filings and recordings that otherwise would be necessary under applicable law or are reasonably requested by the Collateral Agent or its designee to give notice of such financing statements and other documents, amendments thereto, or assignments thereof evidencing the Liens and security interests granted in connection with the New First Lien Documents.

16.     <u>Indemnification</u>.

a.      Any obligations of the Debtors pursuant to the Indemnification Agreements to indemnify current and former officers, directors, agents, or employees with respect to all present and future actions, suits, and proceedings against the Debtors or such directors, officers, agents or employees, based upon any act or omission for or on behalf of the Debtors, other than actions arising out of the intentional fraud, gross negligence or willful misconduct of such directors, officers, agents or employees, will not be discharged or impaired by Confirmation.  All such obligations (other than obligations arising out of the intentional fraud, gross negligence or willful misconduct of such directors, officers, agents or employees) will be deemed and treated as executory contracts to be assumed by the Debtors under the Plan and this Order and will continue as obligations of the Reorganized Debtors.

b.      Notwithstanding anything to the contrary in the Plan or this Order, any indemnification and reimbursement provisions under the Prepetition ABL Credit Agreement or the Superpriority Secured Notes Indenture that are expressly stated to survive any repayment or conversion under, or termination of, the Prepetition ABL Credit Agreement or the Superpriority Secured Notes Indenture, as applicable, shall survive any cancellation, conversion or discharge under the Plan and this Order in accordance with its terms, and any rights that such the Prepetition ABL Agent or the Superpriority Secured Notes Trustee may have under the agency provisions of the Prepetition ABL Credit Agreement or the Superpriority Secured Notes Indenture, as applicable, shall survive any such cancellation or discharge but only to the extent they would have survive under the Prepetition ABL Loan Documents and the Superpriority Notes Indenture.

17.    Plan Distributions.  The Debtors and the Reorganized Debtors are authorized to make all distributions pursuant to the terms of the Plan and to pay any applicable fees and expenses approved by this Order or any other order of this Court.  The distributions under the Plan give

effect to the relative rights and priorities of the various claimholders and are being made in accordance with all applicable intercreditor agreements and subordination agreements governing the Debtors' obligations. All distributions made in accordance with the Plan are intended to be, and shall be, final. The Debtors and Reorganized Debtors (as applicable) are authorized to pay and/or reimburse any and all professional fees, including those incurred by the ABL DIP Agent, the Term DIP Agent, the New ABL Agent, the Trustee (under and as defined in the New First Lien Indenture) and the Notes Collateral Trustee (as defined in the New First Lien Indenture), as and to the extent contemplated by and in accordance with the Plan, the ABL DIP Facility Documents, the Term DIP Documents, the New ABL Documents and the New First Lien Documents, without reference to previous financing orders entered in these cases. The Debtors and Reorganized Debtors (as applicable) are authorized to pay the Transaction Expenses in accordance with Article VI.L of the Plan.

18.    <u>Conditions to Effective Date</u>. The Plan shall not become effective unless and until the conditions set forth in Article VII.B of the Plan have been satisfied or waived pursuant to Article VII.C of the Plan.

19.    <u>Issuance of Plan Securities</u>. The Debtors and the Reorganized Debtors are authorized to issue and distribute all securities provided for under the Plan, including the New Common Equity, the New Preferred Equity, the New Junior Preferred Equity, and the Warrants.

20.    <u>Exemption under Section 1145 of the Bankruptcy Code and Section 4(a)(2) of the Securities Act</u>.

a.    Upon consummation of the Plan, the issuance, distribution and sale of the New Preferred Equity and the New Junior Preferred Equity under the Plan (other than the New Preferred Equity being sold to the Investor Support Parties) shall be exempt from, among other

things, the registration and prospectus delivery requirements of the Securities Act and any other applicable federal, state or local law requiring registration for the offering, issuance, distribution or sale of securities in accordance with and pursuant to section 1145 of the Bankruptcy Code to the maximum extent permitted and applicable, and, to the extent the exemption under section 1145 of the Bankruptcy Code is unavailable, pursuant to another applicable exemption without further act or action by any Entity.

b.      The New Preferred Equity and the New Junior Preferred Equity (other than the New Preferred Equity being sold to the Investor Support Parties) shall be freely tradable and transferable by the recipients thereof, subject to:  (i) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an "underwriter" in section 2(a)(11) of the Securities Act; (ii) compliance with any rules and regulations of the Securities and Exchange Commission, if any, applicable at the time of any future transfer of such securities or instruments; (iii) any restrictions on the transferability of the New Preferred Equity or the New Junior Preferred Equity contained in the New Corporate Governance Documents; and (iv) any applicable regulatory approval.

c.      The offer, issuance, distribution and sale of the New Common Equity and Warrants (including any shares of New Common Equity issuable upon the exercise thereof) under the Plan and of the New Preferred Equity being sold to the Investor Support Parties shall be made only to the Investor Support Parties who represent that they are "accredited investors" within the meaning of Rule 501(a) of Regulation D of the Securities Act, "qualified institutional buyers" or non-U.S. persons purchasing in a transaction exempt from registration under Regulation S of the Securities Act, and, as such, shall be exempt, pursuant to Section 4(a)(2) of the Securities Act, including potentially pursuant to the safe harbor provided by Regulation D promulgated thereunder

and/or Regulation S, or another applicable exemption, from registration under the Securities Act and all rules and regulations promulgated thereunder and pursuant to similar applicable exemptions from registration under any state or local law requiring registration for the offer, issuance, or distribution of securities.

d.    The New Common Equity and Warrants (including any shares of New Common Equity issuable upon the exercise thereof) and the New Preferred Equity being sold to the Investor Support Parties, shall be deemed "restricted securities" (as defined under Rule 144 of the Securities Act) and may not be offered, sold, exchanged, assigned or otherwise transferred (collectively, a "Transfer") unless the Transfer is registered under the Securities Act, or an exemption from registration of the Transfer under the Securities Act is available, subject in all such cases to any limitation on transfer in the New Corporate Governance Documents of Reorganized Guitar Center.

e.    Should the Debtors or the Reorganized Debtors elect, on or after the Effective Date, to reflect all or any portion of the ownership of the New Common Equity, the Warrants (including any shares of New Common Equity issuable upon the exercise of the Warrants), the New Preferred Equity, and the New Junior Preferred Equity through the facilities of DTC, DTC is directed to accept and conclusively rely upon the Plan and this Order in lieu of a legal opinion regarding whether the issuance of the New Common Equity, the Warrants (including any shares of New Common Equity issuable upon the exercise thereof), the New Preferred Equity and the New Junior Preferred Equity are exempt from registration and/or eligible for the DTC book entry delivery, settlement, and depository services.

21.    Cancellation of Existing Securities and Agreements.  Except as otherwise provided under the Plan, this Order or any other Plan Document, on the Effective Date and, other than with

respect to the cancellation of the Existing Common Equity, all agreements, instruments, notes, certificates, indentures, mortgages, security documents, and other instruments or documents evidencing or creating any indebtedness or giving rise to any Claim or Interest and any rights of any holder thereof as of the Effective Date shall be deemed cancelled and of no force or effect (except for the purpose of evidencing a right of the holders of Claims or Interests to receive distributions under the Plan), and the Debtors shall not have any continuing obligations thereunder; *provided* that the foregoing shall not act to cancel any Executory Contract or Unexpired Lease that is assumed pursuant to the Plan.  This Order shall constitute a determination that all Superpriority Secured Notes Claims, Secured Notes Claims, and Unsecured Notes Claims have been automatically and unconditionally released, discharged and terminated on the Effective Date, and such release, discharge, and termination shall be binding upon and govern the acts of all Persons, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of states, federal, state, county and local officials and all other Persons who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments that reflect the release of security interests (all such entities being referred to as the "Recording Officers").

22.    Release of Liens.  Except as otherwise provided in the Plan, this Order, or in any other Plan Document, on the Effective Date, subject to receipt of the applicable distributions, if applicable, all recorded encumbrances, Liens, and other interests (collectively, the "Encumbrances") in the property of the Estates as of the Effective Date shall be released and discharged and all of the right, title, and interest of any holder of such Encumbrances shall revert to the Reorganized Debtors and their successors and assigns, in each case, without any further

approval or order of the Bankruptcy Court and without any action or Filing being required to be made.  Except as otherwise provided in the Plan, this Order, or in any other Plan Document, the holder of any such Encumbrance shall be directed to release any collateral or other property of the Debtors (including any cash collateral) held by such holder and to take such actions as may be requested by the Reorganized Debtors to evidence the release of such Encumbrance, including the execution, delivery and filing or recording of such releases as may be requested by the Reorganized Debtors. The presentation or filing of this Order to any Recording Officer shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Encumbrances. Without limiting the general effect of the foregoing, all Recording Officers are authorized and specifically directed to strike all recorded Encumbrances in favor of the collateral agents for, or holders of, the Superpriority Secured Notes Claims and Secured Notes Claims (collectively, the "Secured Parties") recorded prior to the date hereof. A certified copy of this Order may be filed with the appropriate Recording Officers to evidence cancellation of any recorded Encumbrances in favor of the Secured Parties. If any Secured Party that has filed any financing statement, mortgage or other document or agreement evidencing any Encumbrance shall not have delivered to the Debtors, prior to the Effective Date, termination statements, instruments of satisfaction, or releases of all such Encumbrances, in proper form for filing and executed by the appropriate parties, then the Debtors are hereby authorized to execute and file such statements, instruments or releases of behalf of such Secured Party.

23.     <u>Ordinary Course Distributions</u>.   Once a Claim becomes an Allowed Claim, distributions (if any) shall be made to the holder of such Allowed Claim in accordance with the provisions of the Plan.  The Allowed Claims not paid on the Effective Date shall be paid by the Reorganized Debtors in the ordinary course of business without any interest, dividends or accruals

paid on such Claim (except to the extent payment of interest on such Allowed Claim is required in accordance with Article II.F of the Plan).

24.      <u>Proofs of Claim</u>.  Except as otherwise provided in the Plan, (a) there is no requirement to file a Proof of Claim (or otherwise request allowance of a Claim) in the Chapter 11 Cases and (b) all Allowed Claims shall be satisfied in the ordinary course of business of the Reorganized Debtors.

25.      <u>Disputed Claims Process</u>.

a.      If the Debtors dispute any Claim, such dispute shall be determined, resolved or adjudicated, as the case may be, (i) with respect to Claims (a) relating to Executory Contracts or Unexpired Leases or (b) with respect to which a Proof of Claim or request for payment of an Administrative Claim has been filed in the Chapter 11 Cases, by a Final Order of the Bankruptcy Court, and (ii) with respect to all other Claims, by a Final Order of a court in which such Claim could have been adjudicated if the Chapter 11 Cases had not been commenced (for the avoidance of doubt, these Claims shall survive the Effective Date as if the Chapter 11 Cases had not been commenced).

b.      Notwithstanding the foregoing, the Debtors, the Reorganized Debtors or any other party in interest shall be entitled to object to all Claims except for those Allowed under the Plan or a Final Order.  Any objections to Claims shall be served and Filed (i) on or before the ninetieth (90th) day following the later of (A) the Effective Date and (B) the date that a Proof of Claim is filed or amended or a Claim is otherwise asserted or amended in writing by or on behalf of a holder of such Claim or (ii) such later date as ordered by the Bankruptcy Court upon motion (which may be objected to by any party in interest) filed by the Reorganized Debtors.

c.       Notwithstanding anything to the contrary in the Plan, except with respect to Cure amounts, if any portion of a Claim is Disputed, no payment or distribution provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes Allowed.  No distribution under the Plan shall be made on Disallowed Claims, and the holders of Disallowed Claims shall not be entitled to pursue such Claims in any other court.

26.    Plan Settlement.  The compromises and settlements of Claims, Interests, disputes, and controversies embodied in the Plan are approved under Bankruptcy Rule 9019 and sections 363 and 1123(b)(3) of the Bankruptcy Code.

27.    Section 1146 Exemption.  Pursuant to section 1146 of the Bankruptcy Code, (a) the issuance, transfer or exchange of any securities, instruments or documents, (b) the creation of any lien, mortgage, deed of trust or other security interest, (c) the making, assignment or recording of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, pursuant to, or in connection with the Plan, (d) the grant of collateral under the New First Lien Documents and the New ABL Facility, (e) the issuance, renewal, modification or securing of indebtedness by such means, and the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, and (f) any other transfers (whether from a Debtor to a Reorganized Debtor or to any other Person) of property under the Plan in connection with the Restructuring Transactions shall not be subject to any document recording tax, stamp tax, conveyance fee or other similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, sales tax, use tax or other similar tax or governmental assessment. Consistent with the foregoing, each recorder of deeds or similar official (or any other Person with authority over any of the foregoing) for any county, city or governmental unit in which any instrument hereunder is

to be recorded is directed to comply with the requirements of section 1146 of the Bankruptcy Code and shall accept for filing and recordation accept such instrument without requiring the payment of any filing fees, documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax or similar tax.

28.    <u>Preservation of Causes of Action</u>.  Except as provided in the Plan or in any contract, instrument, release or other agreement entered into or delivered in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtors shall retain all Causes of Action that the Debtors or the Estates may hold against any Person or Entity to the extent not released under Article IX.B of the Plan or otherwise, including the Avoidance Actions (and all Privilege Rights with respect to any of the foregoing), and may, in their sole discretion, pursue or settle any such Causes of Action, as appropriate, in accordance with the best interests of the Estates.  On and after the Effective Date, the Reorganized Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any Causes of Action preserved pursuant to the Plan and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Court.  The Debtors and Reorganized Debtors expressly reserve all rights to prosecute any and all Causes of Action against any Person or Entity, except as otherwise expressly provided in the Plan, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to any Cause of Action upon, after, or as a consequence of the Confirmation or the occurrence of the Effective Date.

29.     <u>Authorization to Consummate</u>.  The Debtors are authorized to consummate the Plan after entry of this Order subject to satisfaction or waiver (by the applicable parties pursuant to the Restructuring Support Agreement) of the conditions precedent to the Effective Date set forth in Article VII of the Plan.

30.     <u>Injunctions, Releases, and Exculpation</u>.  As of the Effective Date, except for the rights that remain in effect after the Effective Date to enforce the Plan, the release, exculpation and injunction provisions set forth in the Plan (including, without limitation, the  provisions set forth in Article IX.A-C that are reproduced below) are hereby approved and shall be effective and binding on all Persons and Entities, without further order or action by this Court.

> a.      **Releases by the Debtors.  Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is, and is deemed released and discharged by the Debtors, the Reorganized Debtors, and their Estates (and their respective successors and assigns) from any and all Causes of Action, including any derivative claims asserted on behalf of the Debtors, that the Debtors, the Reorganized Debtors, or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest, or that any holder of any Claim or Interest could have asserted on behalf of the Debtors, based on or relating to, or in any manner arising from, in whole or in part: (i) the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the formulation, preparation, dissemination, negotiation, or filing of the Restructuring Support Agreement, the DIP Facilities, the New ABL Facility, the Prepetition ABL Loan Documents, the Disclosure Statement, or the Plan; (ii) any restructuring, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the DIP Facilities, the New ABL Facility, the Prepetition ABL Loan Documents, the Disclosure Statement, or the Plan; (iii) the Chapter 11 Cases, the DIP Facilities, the Prepetition ABL Loan Documents, the Disclosure Statement, the Plan, the filing of the Chapter 11 Cases, the pursuit of confirmation of the Plan, the pursuit of consummation of the Plan, the**

administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement; (iv) any securities issued by the Debtors, the ownership thereof, and the assertion or enforcement of rights and remedies thereunder against the Debtors; any Avoidance Actions; and the Indentures; or (v) any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, in each case related to the foregoing clauses (i) through (iv). Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement executed to implement the Plan, (ii) the rights of any holder of allowed Claims to receive distributions under the Plan, (iii) any obligations of any party under a contract or lease that has been assumed by the Debtors or the Reorganized Debtors, or (iv) any claims, causes of action, defenses, offsets, rights of setoff, rights of recoupment or Avoidance Actions asserted as defenses or brought as counterclaims to Claims asserted against the Debtors or the Reorganized Debtors.

b.    **Releases by Holders of Claims and Interests.**  As of the Effective Date, each Releasing Party is, and is deemed to have released and discharged each Debtor, Reorganized Debtor, and Released Party from any and all Causes of Action, including any derivative claims asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part: (i) the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the formulation, preparation, dissemination, negotiation, or filing of the Restructuring Support Agreement, the DIP Facilities, the New ABL Facility, the Prepetition ABL Loan Documents, the Disclosure Statement, or the Plan; (ii) any restructuring, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the DIP Facilities, the New ABL Facility, the Prepetition ABL Loan Documents, the Disclosure Statement, or the Plan; (iii) the Chapter 11 Cases, the DIP Facilities, the Prepetition ABL Loan Documents, the Disclosure Statement, the Plan, the filing of the Chapter 11 Cases, the pursuit of confirmation of the Plan, the pursuit of consummation of the Plan, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement; (iv) any

**securities issued by the Debtors, the ownership thereof, and the assertion or enforcement of rights and remedies thereunder against the Debtors; any Avoidance Actions; and the Indentures; or (v) any other act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date, in each case related to the foregoing clause (i) through (iv). Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or (ii) the rights of any holder of allowed Claims to receive distributions under the Plan.**

c.      **Exculpation.  Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from any Cause of Action for any Claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or termination of the Restructuring Support Agreement and related prepetition transactions, the Disclosure Statement, the Plan, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of confirmation of the Plan, the pursuit of consummation of the Plan, the administration and implementation of the Plan, including the issuance of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, except for claims related to any act or omission that is determined in a final order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of, and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.**

d.    **Injunction.  Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold Claims or Interests that have been released pursuant to the Plan, shall be discharged pursuant to the Plan, or are subject to exculpation pursuant to the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Released Parties or the Exculpated Parties: (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (iii) creating, perfecting, or enforcing any lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (iv) except as otherwise provided in Article II.D of the Plan, asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or interests unless such Entity has timely asserted such setoff right in a document filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a claim or interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released or settled pursuant to the Plan.**

e.    **Term of Injunctions or Stays.  Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays arising under or entered during the pendency of the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.**

31.    Discharge of Claims and Termination of Interests.  Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise provided in the Plan, this Order, or any other Plan Document, as of the Effective Date:  (a) the treatment of all Claims and Interests shall be in exchange for and in complete satisfaction, discharge and release of such Claims and Interests,

including any interest accrued on any Claims from and after the Petition Date; (b) the Plan shall bind all holders of Claims and Interests, notwithstanding whether any such holders voted to reject the Plan or failed to vote on the Plan; (c) all Claims and Interests shall be satisfied, discharged and released in full, and the Debtors' liability with respect thereto shall be extinguished completely, including any liability of the kind specified under section 502(g), 502(h), or 502(i) of the Bankruptcy Code; and (d) all Entities shall be precluded from asserting against the Debtors, the Estates, the Reorganized Debtors, their successors and assigns and their assets and properties any Claims or Interests or any other liabilities based upon any documents, instruments or any act or omission, transaction or other activity of any kind or nature that occurred on or before the Effective Date.

32.     Quarterly Fees.  On or before the Effective Date, all fees payable pursuant to 28 U.S.C. § 1930 shall be paid in full by the Debtors.  Fees payable pursuant to 28 U.S.C. § 1930 after the Effective Date shall be paid by the Reorganized Debtors until the closing of the applicable case pursuant to section 350(a) of the Bankruptcy Code.

33.     Insurance Policies.

a.      Notwithstanding anything in this Order or in the Plan to the contrary, all of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto, shall be treated as and deemed to be Executory Contracts and/or Unexpired Leases under the Plan, and on the Effective Date, pursuant to section 365(a) of the Bankruptcy Code, the Reorganized Debtors shall be deemed to have assumed all such insurance policies and any agreements, documents and instruments related thereto, including all D&O Liability Insurance Policies (including any obligations to obtain tail coverage liability insurance due to the change in control triggered on the Effective Date).  Entry of this Order constitutes the Court's approval of the

Reorganized Debtors' assumption of all such insurance policies, including the D&O Liability Insurance Policies. Notwithstanding anything to the contrary contained in the Plan, Confirmation shall not discharge, impair or otherwise modify any indemnity obligations referenced in the foregoing insurance policies, including the D&O Liability Insurance Policies, and each such indemnity obligation shall survive the Effective Date.

b.        To the extent not already obtained, on the Effective Date, the Debtors or the Reorganized Debtors, as applicable, shall, and shall be authorized to, obtain a "tail" insurance policy with a claims period of at least six (6) years from and after the Effective Date from an insurance carrier with the same or better credit rating as the Debtors' current insurance carrier with respect to D&O Liability Insurance Policies and fiduciary liability insurance with benefits and levels of coverage at least as favorable as the Debtors' existing policies with respect to matters existing or occurring at or prior to the Effective Date (including in connection with the Restructuring Support Agreement, the Plan or the transactions contemplated by the Plan, including the Restructuring Transactions).

c.        After the Effective Date, the Reorganized Debtors shall not terminate or otherwise reduce the coverage under any D&O Liability Insurance Policy (including such tail coverage liability insurance) in effect as of the Effective Date, and all members, managers, general partners, directors, and officers of the Debtors who served in such capacities at any time prior to the Effective Date and who are covered by any such policy shall be entitled to the full benefits of any such policy for the full term of such policy (and all tail coverage related thereto) regardless of whether such members, managers, general partners, directors, and/or officers remain in such positions after the Effective Date.

34.    <u>Provisions Regarding Sureties</u>.  Notwithstanding anything in the Plan or this Order

to the contrary, on the Effective Date:  (i) any surety bonds (the "<u>Surety Bonds</u>") naming any of

the Debtors as principal and any related indemnification and/or collateral agreements entered into

by any Debtor (collectively, the "<u>Surety Indemnity Agreements</u>") shall be treated as Executory

Contracts that have been assumed by the Reorganized Debtors under the Plan and shall remain

unaffected by entry of this Order; *provided* that this Order does not constitute a finding as to

whether any of the Surety Bonds or Surety Indemnity Agreements are "executory contracts" within

the meaning of section 365 of the Bankruptcy Code; (ii) the Debtors' obligations under the Surety

Bonds shall be unimpaired and constitute continuing obligations of the Reorganized Debtors; and

(iii) any collateral securing any Surety Bond shall remain in place.  All amounts due and owing

pursuant to the Surety Bonds and/or Surety Indemnity Agreements, if any, shall be satisfied in the

ordinary course by the Reorganized Debtors, and, on the Effective Date, any proofs of claim, if

any, filed by any provider of a Surety Bond (a "<u>Surety</u>") on account of such Surety Bond or any

Surety Indemnity Agreement shall be deemed withdrawn without further notice to or action by the

Court and shall be expunged from the claims register.  Nothing in the Plan or this Order, including

any release or injunction provisions therein, shall be deemed to (i) waive any of the Debtors' or

Reorganized Debtors' rights or defenses with respect to any Claims asserted by any Surety, (ii)

modify the respective rights and obligations of the Sureties, the Debtors, or the Reorganized

Debtors, as applicable, under the Surety Bonds, the Surety Indemnity Agreements, or any related

collateral agreements, or (iii) bar, impair, alter, diminish, or enlarge any of the rights or claims of

the Sureties against any non-Debtor contractual or common law indemnitors.

35.    <u>Documents, Mortgages, and Instruments</u>.  Each federal, state, commonwealth,

local, foreign, or other governmental agency is authorized and directed to accept any and all

documents, mortgages, and instruments necessary or appropriate to effectuate, implement, or

consummate the transactions, including the Restructuring Transactions, contemplated by the Plan

and this Order.

36.    Section 341(a) Meeting; SOFAs and Schedules.  Subject to the occurrence of the

Effective Date, (A) the requirement that the U.S. Trustee convene a meeting of creditors pursuant

to section 341(a) of the Bankruptcy Code is hereby waived, and (B) the requirement that the

Debtors file SOFAs and Schedules (each, as defined in the Scheduling Order) is permanently

excused.

37.    Provisions of Plan and Order Nonseverable and Mutually Dependent.  This Order

constitutes a judicial determination that each term and provision of the Plan and this Order,

including the findings of fact and conclusions of law set forth herein, is:  (A) valid and enforceable

pursuant to its terms; (B) integral to the Plan and may not be deleted or modified without the

consent of the Debtors; *provided* that any such deletion or modification shall be consistent with

the terms and subject to the conditions set forth in the Restructuring Support Agreement and

otherwise subject to the applicable consent rights set forth in the Restructuring Support Agreement

and the reasonable consent of the Prepetition ABL Agent and the ABL DIP Agent to the extent

such modifications impact the Prepetition ABL Lenders, the DIP ABL Lenders, the Prepetition

ABL Claims, or the ABL DIP Claims; and (C) non-severable and mutually dependent.

38.    Reversal/Stay/Modification/Vacatur of Order.  Except as otherwise provided in this

Order, if any or all of the provisions of this Order are hereafter reversed, modified, vacated, or

stayed by subsequent order of this Court, or any other court of competent jurisdiction, such

reversal, stay, modification, or vacatur shall not affect the validity or enforceability of any act,

obligation, indebtedness, liability, priority, or Lien incurred or undertaken by the Debtors, the

Reorganized Debtors, or any other party authorized or required to take action to implement the Plan, as applicable, prior to the effective date of such reversal, stay, modification, or vacatur. Notwithstanding any such reversal, stay, modification, or vacatur of this Order, any act or obligation incurred or undertaken pursuant to, or in reliance on, this Order prior to the effective date of such reversal, stay, modification, or vacatur shall be governed in all respects by the provisions of this Order, the Plan, the Plan Documents, or any amendments or modifications to the foregoing.

39.    <u>Reservation of Rights in Favor of Governmental Units; Taxing Authorities</u>.

a.    Nothing in this Order or the Plan discharges, releases, precludes, or enjoins: (a) any liability to any Governmental Unit that is not a "Claim;" (b) any Claim of a Governmental Unit arising after the Effective Date; (c) any liability of any person or Entity as the owner or operator of property after the Effective Date to a Governmental Unit incurred as a result of such Governmental Unit's police or regulatory powers; or (d) any liability to a Governmental Unit on the part of any person or Entity other than the Debtors.  Nothing in the Plan or this Order shall enjoin or otherwise bar a Governmental Unit from asserting or enforcing any liability described in the preceding sentence.  Nothing in this Order or the Plan divests any tribunal of any jurisdiction it may have to adjudicate any defense based on this paragraph.

b.    Notwithstanding any other provisions herein, with respect to any Allowed Priority Tax Claims or Allowed Secured Tax Claims (including those for 2020 ad valorem taxes filed by Certain Taxing Authorities),[8] such Claims shall be paid in the ordinary course of business

---

[8]    "<u>Certain Taxing Authorities</u>" means Maricopa County Treasurer, Bell County Tax Appraisal District, Denton County, Bexar County, City of Mesquite, Cypress-Fairbanks ISD, Dallas County, El Paso, Fort Bend Co. WCID #02, Fort Bend County, Harris County, Hidalgo County, Lewisville ISD, McAllen, Northwest ISD, Nueces County, Smith County, Tarrant County, Randall County Tax Office, Arlington ISD, Crowley ISD, Plano ISD, Lubbock Central Appraisal District, Brazoria County, Cinco Mud 12, Willowfork Drainage, Fort Bend ISD, Fort

by the Reorganized Debtors.  If such taxes are paid on or before the date such taxes may be paid without penalty under applicable non-Bankruptcy law, the taxes may be paid without penalty or interest.  However, should such taxes not be paid timely pursuant to applicable non-bankruptcy law, they shall be paid with such interest and penalties as would ordinarily accrue under applicable non-bankruptcy law.  The Certain Taxing Authorities shall retain their liens until the taxes are paid in full, and such liens shall have the same validity, extent and priority as they had on the Petition Date.  In the event timely payment is not made of any Allowed Priority Tax Claims or Allowed Secured Tax Claims, the relevant taxing authority may proceed to collect all amounts owed pursuant to applicable non-bankruptcy law without further recourse to this Court.

c.      Nothing in the Plan or this Order discharges or releases the Debtors, the Reorganized Debtors or any non-Debtors from any claims or causes of action relating to tax liabilities owed by the Debtors to the Texas Comptroller of Public Accounts (the "Texas Comptroller" and such claims and causes of action relating to tax liabilities owed by the Debtors to the Texas Comptroller, the "Texas Comptroller Claims") or impairs the ability of the Texas Comptroller to pursue such Texas Comptroller Claims against any Debtors, Reorganized Debtors or non-Debtors.  All Texas Comptroller Claims shall survive these cases. As such, the Texas Comptroller Claims shall be paid and determined in the ordinary course of business and, as applicable, by the administrative or judicial tribunals before which such rights or claims would have been resolved or adjudicated if these cases had not been commenced.  Without limiting the foregoing, for the avoidance of doubt:  (A) the Texas Comptroller is not required to file any proofs of claim in these cases; (B) nothing affects or impairs the Texas Comptroller's ability to make

---

Bend County LID 2, JC DD6, Tomball ISD, Malcomson Rud UD, Clear Creek ISD, Baybrook MUD, Spring Branch ISD, City of Houston, Harris-FB MUD 3, Pasadena ISD, and Humble ISD.

demand on, be paid by, or otherwise pursue any sureties that are liable to the Texas Comptroller

on any debts related to the Debtors and/or the Reorganized Debtors; (C) nothing affects or impairs

the Texas Comptroller's ability to exercise any police or regulatory powers it may have against

the Debtors and/or the Reorganized Debtors; (D) nothing affects or impairs the Texas

Comptroller's rights to assert setoff and recoupment, including contingent or unliquidated rights,

against the Debtors and/or the Reorganized Debtors; and (E) nothing contained in the Plan or this

Order shall be deemed to be a waiver or relinquishment of any rights, claims, Causes of Action,

rights of setoff or recoupment, rights to appeal tax assessments, or other legal or equitable defenses

that the Debtors and/or the Reorganized Debtors have under nonbankruptcy law in connection with

any claim, liability or cause of action of the Texas Comptroller, including but not limited to, the

Texas Comptroller Claims, and all such rights are expressly preserved. For the avoidance of doubt,

Texas Comptroller Claims shall not include any Superpriority Secured Notes Claims, Secured

Notes Claims or Unsecured Notes Claims.

       d.      Notwithstanding anything to the contrary in the Plan or this Order, nothing

in the Plan or in this Order shall release or exculpate any non-Debtor, including any Released

Parties and/or Exculpated Parties that are not Debtors, from any liability arising under the Internal

Revenue Code against the Released Parties and/or Exculpated Parties; *provided* that the foregoing

sentence shall not (x) limit the scope of discharge granted to the Debtors and the Reorganized

Debtors under sections 524 and 1141 of the Bankruptcy Code, or (y) diminish the scope of any

exculpation to which any party is entitled under section 1125(e) of the Bankruptcy Code.

      40.    <u>Consent Rights</u>.  Notwithstanding anything herein to the contrary, any and all

consent rights of the Support Parties set forth in the Restructuring Support Agreement with respect

to the form and substance of this Order, the Plan, all exhibits to the Plan, the Plan Supplement, and

the Definitive Documents (as defined in the Restructuring Support Agreement), including any

amendments, restatements, supplements, or other modifications to such agreements and

documents, and any consents, waivers, or other deviations under or from any such documents, are

incorporated herein by this reference (including to the applicable definitions in Article I.A of the

Plan) and shall be fully enforceable as if stated in full herein.  Failure to reference the rights referred

to in the immediately preceding sentence as such rights relate to any document referenced in the

Restructuring Support Agreement shall not impair such rights and obligations.

41.     <u>Governing Law</u>. Except to the extent that the Bankruptcy Code or other federal law

is applicable, or to the extent that a Plan Document provides otherwise, the rights, duties, and

obligations arising under the Plan and the other Plan Documents shall be governed by, and

construed and enforced in accordance with, the internal laws of the State of New York, without

giving effect to the principles of conflicts of laws thereof (other than section 5-1401 and section

5-1402 of the New York General Obligations Law).

42.     <u>Applicable Nonbankruptcy Law</u>.  Pursuant to sections 1123(a) and 1142(a) of the

Bankruptcy Code, the provisions of this Order, the Plan, the Plan Documents, and any other related

documents or any amendments or modifications thereto, shall apply and be enforceable

notwithstanding any otherwise applicable nonbankruptcy law.

43.     <u>Substantial Consummation</u>.  On the Effective Date, the Plan shall be deemed to be

substantially consummated under sections 1101 and 1127 of the Bankruptcy Code.

44.     <u>Effect of Failure of Conditions</u>.  If the conditions listed in Articles VII.A or VII.B

of the Plan are not satisfied or waived in accordance with Article VII.C of the Plan on or before

the termination of the Restructuring Support Agreement, the Plan shall be null and void in all

respects and nothing contained in the Plan or the Disclosure Statement shall (a) constitute a waiver

or release of any Claims by or against or any Interests in the Debtors, (b) prejudice in any manner the rights of any Person, or (c) constitute an admission, acknowledgement, offer, or undertaking by the Debtors, any of the Support Parties, or any other Person.

45.    <u>Headings</u>.  Headings used in this Order are for convenience only, and do not constitute a part of the Plan or this Order for any other purpose.

46.    <u>Notice of Entry of Order and Effective Date</u>.  In accordance with Bankruptcy Rules 2002 and 3020(c), as soon as reasonably practicable after the Effective Date, the Reorganized Debtors shall serve notice of the entry of this Order and occurrence of the Effective Date, substantially in the form attached to this Order as <u>Exhibit B</u>, on all holders of Claims and Interests, the U.S. Trustee, and any other parties requesting notice in these cases by United States mail, first-class postage prepaid, by hand, by overnight delivery, or by electronic service; *provided* that no notice or service of any kind shall be required to by mailed or made upon any entity to whom the Debtors mailed a Confirmation Hearing Notice but received such notice returned marked "undeliverable", "no forwarding address," or "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such entity, or are otherwise aware, of that entity's new address.  Such notice is hereby approved in all respects and shall be deemed good and sufficient notice of entry of this Order and the occurrence of the Effective Date.

47.    <u>Retention of Jurisdiction</u>.  The Court may properly, and upon the Effective Date shall, to the full extent set forth in the Plan, retain jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases, including the matters set forth in Article XI of the Plan and section 1142 of the Bankruptcy Code.

48.    <u>Final Order</u>.  This Order is a final order and the period in which an appeal must be filed shall commence upon the entry hereof.

49.   <u>Waiver of Stay</u>.  The requirements under Bankruptcy Rule 3020(e) that an order confirming a plan is stayed until the expiration of 14 days after entry of the order are hereby waived.  This Order shall take effect immediately and shall not be stayed pursuant to Bankruptcy Rules 3020(e), 6004(h), 6006(d), or 7062 or otherwise.

50.   <u>Inconsistency</u>.   This Order supersedes any Court order issued prior to the Confirmation Date that may be inconsistent with this Order.  To the extent of any inconsistency between this Order and the Plan, this Order shall govern and control.

Dated: _____, 2020
      Richmond, Virginia

                     _____
                     HONORABLE KEVIN R. HUENNEKENS
                     UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

_/s/_____

Tyler P. Brown, Esq.          (VSB No. 28072)
Justin F. Paget, Esq.          (VSB No. 77949)
Jennifer E. Wuebker, Esq. (VSB No. 91184)
**HUNTON ANDREWS KURTH LLP**
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone:     (804) 788-8200
Facsimile:     (804) 788-8218

- and –

Dennis F. Dunne, Esq.     (admitted *pro hac vice*)
Andrew M. Leblanc, Esq. (admitted *pro hac vice*)
Michael W. Price, Esq.     (admitted *pro hac vice*)
Lauren C. Doyle, Esq.      (admitted *pro hac vice*)
**MILBANK LLP**
55 Hudson Yards
New York, New York 10001
Telephone:     (212) 530-5000
Facsimile:     (212) 530-5219

Thomas R. Kreller, Esq. (admitted *pro hac vice*)
**MILBANK LLP**
2029 Century Park East
33rd Floor
Los Angeles, California 90067
Telephone:     (424) 386-4000
Facsimile:     (213) 629-5063

*Proposed Co-Counsel for Debtors and Debtors in Possession*

## CERTIFICATION OF ENDORSEMENT
## UNDER LOCAL BANKRUPTCY RULE 9022-1(C)

Pursuant to Local Bankruptcy Rule 9022-1(C), I certify that the foregoing proposed order
has been endorsed by or served upon all necessary parties.

_/s/_____

## Exhibit A

**Plan**

**<u>Exhibit B</u>**

**Form of Notice Entry of Confirmation Order and Occurrence of Effective Date**

Dennis F. Dunne, Esq.     (*pro hac vice* pending)
Andrew M. Leblanc, Esq.  (*pro hac vice* pending)
Michael W. Price, Esq.    (*pro hac vice* pending)
Lauren C. Doyle, Esq.     (*pro hac vice* pending)
**MILBANK LLP**
55 Hudson Yards
New York, New York 10001
Telephone:      (212) 530-5000
Facsimile:      (212) 530-5219

Thomas R. Kreller, Esq.   (*pro hac vice* pending)
**MILBANK LLP**
2029 Century Park East
33rd Floor
Los Angeles, California 90067
Telephone:      (424) 386-4000
Facsimile:      (213) 629-5063

Tyler P. Brown, Esq.      (VSB No. 28072)
Justin F. Paget, Esq.     (VSB No. 77949)
Jennifer E. Wuebker, Esq. (VSB No. 91184)
**HUNTON ANDREWS KURTH LLP**
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone:      (804) 788-8200
Facsimile:      (804) 788-8218

*[Proposed] Co-Counsel for Debtors and Debtors in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| GUITAR CENTER, INC. *et al.*,[1] | ) | Case No. 20-34656 (KRH) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## NOTICE OF (I) ENTRY OF ORDER CONFIRMING THE JOINT
## PRE-PACKAGED PLAN; AND (II) OCCURRENCE OF THE EFFECTIVE DATE

**PLEASE TAKE NOTICE** that on December [17], 2020, the United States Bankruptcy Court for the Eastern District of Virginia (the "Bankruptcy Court"), entered the *Findings of Fact, Conclusions of Law, and Order: (I) Approving, on a Final Basis, Adequacy of the Disclosure Statement; (II) Confirming the Amended Joint Pre-Packaged Chapter 11 Plan; and (III) Granting Related Relief* [Docket No. [●]] (the "Confirmation Order") confirming the *Amended Joint Pre-Packaged Chapter 11 Plan of Reorganization of Guitar Center, Inc. et al.* [Docket No. 282] (as amended, modified and supplemented from time to time, the "Plan").[2]

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Guitar Center Holdings, Inc. (3262); Guitar Center, Inc. (0862); Guitar Center Stores, Inc. (4340); GTRC Services, Inc. (9503); GC Business Solutions, Inc. (3928); Guitar Center Gift Card Company, LLC (3370); Music & Arts Instructor Services, LLC (7811); and AVDG, LLC (4440).  The Debtors' service address is 5795 Lindero Canyon Rd., Westlake Village, CA 91362.

[2]    Capitalized terms used but not otherwise defined in this Notice shall have the meanings ascribed to such terms in the Plan.

PLEASE TAKE FURTHER NOTICE that the Effective Date occurred on [●], 2020.

PLEASE TAKE FURTHER NOTICE that copies of the Plan and the Disclosure Statement may be obtained free of charge by visiting the website maintained by Prime Clerk LLC at https://cases.primeclerk.com/guitarcenter.  In addition, the Plan and the Confirmation Order are on file with the Bankruptcy Court and may be reviewed for a fee by accessing the Bankruptcy Court's website: www.vaeb.uscourts.gov.  Note that a PACER password and login are needed to access documents on the Bankruptcy Court's website.  A PACER password can be obtained at: www.pacer.psc.uscourts.gov.

PLEASE TAKE FURTHER NOTICE that the Plan and the provisions thereof are binding on the Debtors, the Reorganized Debtors, any holder of a Claim or Interest, and such holder's successors and assigns, whether or not such holder voted to accept the Plan or receives a distribution under the Plan on account of its Claim or Interest.

*[Remainder of page intentionally left blank]*

Dated:  December [●], 2020
Richmond, Virginia

*/s/ [DRAFT]*_____

Tyler P. Brown, Esq.        (VSB No. 28072)
Justin F. Paget, Esq.        (VSB No. 77949)
Jennifer E. Wuebker, Esq. (VSB No. 91184)
**HUNTON ANDREWS KURTH LLP**
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone:    (804) 788-8200
Facsimile:    (804) 788-8218
Email:        tpbrown@huntonak.com
              jpaget@huntonak.com
              jwuebker@huntonak.com


-and-


Dennis F. Dunne, Esq.      (admitted *pro hac vice*)
Andrew M. Leblanc, Esq. (admitted *pro hac vice*)
Michael W. Price, Esq.      (admitted *pro hac vice*)
Lauren C. Doyle, Esq.      (admitted *pro hac vice*)
**MILBANK LLP**
55 Hudson Yards
New York, New York 10001
Telephone:    (212) 530-5000
Facsimile:    (212) 530-5219
Email:        ddunne@milbank.com
              aleblanc@milbank.com
              mprice@milbank.com
              ldoyle@milbank.com


Thomas R. Kreller, Esq. (admitted *pro hac vice*)
**MILBANK LLP**
2029 Century Park East
33rd Floor
Los Angeles, California 90067
Telephone:    (424) 386-4000
Facsimile:    (213) 629-5063
Email:        tkreller@milbank.com


*[Proposed] Co-Counsel for Debtors and Debtors in Possession*